OPINION OF THE COURT
Marylin G. Diamond, J.
The City of New York (City) and the New York City Department of Health move for a preliminary injunction and continuation of the temporary closing order granted by this court on March 28, 1995, for the premises known as the New David Cinema, located at 236 West 54th Street in Manhattan. Plaintiffs seek this relief based upon the observations by two Department of Health inspectors of numerous acts of high-risk sexual activity, as defined by the State Sanitary Code (10 NYCRR subpart 24-2) during 22 visits to the Cinema over a two-month period.
On March 31, 1995, this court signed a temporary restraining order closing the New David Cinema. Plaintiffs maintain that the New David Cinema constitutes a public nuisance and should be temporarily closed pursuant to Administrative Code of the City of New York § 7-707 (a), pending a permanent injunction.
This action is brought as part of the City’s continuing effort to control the spread of the human immunodeficiency virus (HIV), which has been identified as the cause of Acquired Immune Deficiency Syndrome (AIDS). According to Dr. Margaret A. Hamburg, M.D., the Commissioner of Health of the Department of Health, over 74,000 cases of AIDS have been reported in New York City since the beginning of the HIV/ AIDS epidemic. Over 50,000 adults are known to have died of the disease. AIDS is the leading cause of death among adults aged 25-44 in New York City. There are now approximately 1,000 new cases of AIDS reported in New York City every *411 month. There is currently no curative treatment for AIDS or HIV infection.
The New York State Public Health Council (the Council) has determined that two of the major risk behaviors associated with the transmission of HIV are anal intercourse and fellatio. The Council also has determined that establishments that make facilities available for the purpose of engaging in such activities contribute to the spread of HIV. The State Sanitary Code therefore declares that facilities in which such activities take place "shall constitute a threat to the public health” (10 NYCRR 24-2.2) and are prohibited, and may be closed by local health officers as constituting a "public nuisance.” (10 NYCRR 24-2.3.)
The action is brought pursuant to the Nuisance Abatement Law (Administrative Code tit 7, ch 7), which authorizes the Corporation Counsel’s office to commence an action for a permanent injunction against a public nuisance. Section 7-703 (e) of the Administrative Code defines a public nuisance as, inter alla, any building (other than certain one- or two-family dwellings) which is a nuisance as defined in section 17-142 of the Administrative Code. Section 17-142 of the Administrative Code defines a nuisance as follows: "The word 'nuisance’, shall be held to embrace public nuisance, as known at common law or in equity jurisprudence; whatever is dangerous to human life or detrimental to health * * * All such nuisances are hereby declared illegal.”
FACTS
Defendant 236 W. 54th St. Corp. does business as the New David Cinema (the Cinema) in premises located at 236 West 54th Street. Defendant PUR Realty Associates (PUR), a New York partnership, is the fee owner of the premises. Defendant Raymond Dana is president and sole stockholder of defendant 236 W. 54th St. Corp. and a partner of defendant PUR. Defendants Prosper Mamane and Uri Zohar are partners of defendant PUR. Plaintiffs have named and served "John Doe” and "Jane Doe” as defendants as well, representing any persons unknown as the "owners, operators, lessors, lessees, occupants, and all other persons claiming any right, title or interest in the subject premises, and their agents and employees.” Plaintiffs initially sued New David Cinema Corp. and not 236 W. 54th St. Corp., believing that the former entity operated the Cinema. On or about April 3, 1995, plaintiffs named *412 and served 236 W. 54th St. Corp. with an amended summons and complaint.
In support of this proceeding, plaintiffs have submitted affidavits by two inspectors of the New York City Department of Health. The inspectors’ affidavits document that high-risk sexual activity occurs at the Cinema on a regular and frequent basis. In visits between March 7, 1995 and March 20, 1995, these inspectors observed at least 45 incidents of high-risk sexual activity engaged in by patrons of the Cinema. These inspections followed letters of warning from the Department of Health dated August 10, 1993 and February 10, 1995. At hearings held on April 6 and 7, 1995, pursuant to section 7-707 of the Administrative Code, the defendants appearing on the action stipulated, without conceding the truth, that the testimony of plaintiffs’ inspectors would be the same as the statements in their affidavits.
It is thus undisputed for the purposes of this proceeding that the interior of the Cinema has a viewing area with approximately 160 seats, a corridor opposite the viewing area, restrooms, a lounge and a corridor leading to a staircase, all on the first floor. The staircase leads to a second floor containing two lounge areas. Plaintiff’s investigators allege that high-risk sexual activity occurred in open view in the seating area, the main floor lounge, the restrooms, both upstairs lounges, and the corridors and hallways on both floors.
Prior to the March 1995 inspections, Associate Commissioner of Health Mark Barnes wrote to the Cinema on August 10, 1993, requesting the Cinema’s voluntary cooperation with the City’s efforts to stem the AIDS epidemic. In response to Barnes’ letter, Mr. Herbert S. Kassner, Esq., identifying himself as "Attorney for David Cinema,” wrote on September 22, 1993:
"Dear Sir,
"In response to your letter of August 10, 1993 in reference to the above theater, please be advised that my client, owner of said theater, has instituted a program of periodic theater inspections as well as posted conspicuous signage aimed at advising patrons against participating in sexual conduct in the theater and ensuring that such conduct will be discovered and halted should it occur.
"An employee of the theater walks through the theater every ten or fifteen minutes. He has instructions to halt any unlawful or improper conduct and, if necessary, eject perpetrators.
*413 "Conspicuous signage warns patrons against improper or unlawful conduct.
"Yours very truly,
"/s/ Herbert S. Kassner”.
Subsequent to this exchange of correspondence, plaintiffs’ investigators observed further, frequent acts of high-risk sexual activity at the Cinema. On February 10, 1995, Deputy Commissioner of Health Dr. Benjamin A. Mojica, M.D., M.P.H., wrote to PUR, c/o Raymond Dana, at 236 West 54th Street. Dr. Mojica enclosed a copy of subpart 24-2 of the State Sanitary Code proscribing establishments as defined in the State Sanitary Code. He then wrote: "You are hereby notified that recent inspections reveal that legally prohibited sexual activities are occurring at the David/New David Cinema on a frequent basis. Specifically, many acts of anal intercourse and fellatio have been observed in various parts of your establishment in recent days, including, but not limited to, the smaller room in the lounge on the second floor, and the lounge area on the first floor. You are further notified that inspections of your facility are being conducted on a continuing basis.”
Defendants do not dispute receiving Dr. Mojica’s letter, or the 1993 letter. There was, according to the Department of Health inspectors, some reduction in high-risk sexual activity at the Cinema after the February 10, 1995 letter was sent. However, the lessening of activity was not permanent. Between March 7, 1995 and March 20, 1995 the two inspectors whose affidavits are attached to plaintiff’s moving papers observed at least 45 incidents of high-risk sexual activity engaged in by patrons of the Cinema. As a result, plaintiffs commenced this action on March 31, 1995.
Defendants presented three witnesses at the hearings on April 6 and 7, 1995. Those witnesses were Michael, Donald and Luslito Bicierro. Michael and Donald are brothers and Luslito is their cousin. Each testified that he worked at the Cinema and monitored the behavior of patrons there. Although these witnesses saw kissing and hugging, each further testified that he saw no high-risk sexual activity as alleged by plaintiffs. However, Donald and Luslito each admitted on cross-examination that the Cinema’s patrons, who regularly patronize the Cinema, knew who he was and would know not to engage in sexual acts when he was present. According to the Department of Health inspectors, the monitors each carried a flashlight and a set of keys that jingled, letting patrons *414 know when he was coming. Donald’s testimony corroborates this observation. Finally, in response to a question by the court, Donald contradicted the testimony of Michael, stating that Michael, who worked at night, told Donald, who worked in the late morning and early afternoon, that Michael had removed people from the Cinema at night because of their sexual behavior. Michael testified that he threw people out, but that he did not see anybody having sex.
APPLICABLE LAW
Defendants Raymond Dana and 236 W. 54th St. Corp. oppose this proceeding on two grounds. First, these defendants argue that granting a preliminary injunction closing the Cinema would violate the New York Constitution’s guarantee of freedom of expression. (NY Const, art I, § 8, citing People ex rel. Arcara v Cloud Books, 68 NY2d 553.) Second, these defendants argue that the initial failure of plaintiffs to name and serve 236 W. 54th St. Corp. requires dismissal of the complaint.
Article I, § 8 of the NY Constitution states in relevant part: "Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press.” It is undisputed that motion pictures are protected by article I, § 8. Defendants urge that New York Constitution, article I, § 8, as construed by the Court of Appeals in Arcara (supra), precludes granting the requested relief.
The facts in Arcara (supra) were as follows. The defendant therein, Cloud Books, operated a store where it sold adult books and showed sexually explicit movies. The Erie County District Attorney, aware that patrons of Cloud Books were using the premises to engage in illegal sexual acts, including prostitution, applied for an order closing the bookstore for a year pursuant to Public Health Law article 23, title II, entitled "Houses of Prostitution: Injunction and Abatement.” The Court of Appeals noted that the District Attorney had not arrested or prosecuted the offenders, nor had he applied for an injunction to prevent the illegal acts from occurring on the premises in the future before moving to close the bookstore.
Setting forth the applicable standard of law, the Court continued: "[W]hen government regulation designed to carry out a legitimate and important State objective would inciden *415 tally burden free expression, the government’s action cannot be sustained unless the State can prove that it is no broader than needed to achieve its purpose.” (Supra, at 558.) The Arcara Court held that "[i]f other sanctions, such as arresting the offenders, or injunctive relief prove unavailing” (at 559) then the State’s burden under the standard would be met. The Arcara Court concluded that the Erie County District Attorney had not met the burden, and dismissed the portion of the action seeking to close the bookstore.
In the present case, the Department of Health issued two warning letters two years apart before moving to close the Cinema. The second warning letter set forth the consequences of a failure to comply, i.e., an action to close the Cinema. Defendants argue, however, that only the failure of judicial action, such as an injunction against the illegal behavior, can satisfy the State’s burden of showing the futility of lesser sanctions. Defendants’ argument is mistaken. Nothing in Arcara (supra) suggests that the lesser State action that proves unavailing must be judicial; to the contrary, one suggested course of action in Arcara, arresting the offending patrons, is executive rather than judicial in nature.
Furthermore, under New York City Charter § 556, the plaintiff Department of Health has "jurisdiction to regulate all matters affecting health,” specifically including the abatement of nuisances. The Commissioner of Health of the Department of Health is empowered by New York City Health Code § 3.07 to issue orders, the violation of which may subject the violator to criminal penalties. (See, NY City Charter § 558.) The Charter specifically contemplates that the Department of Health will "enforce all provisions of law” in areas under its jurisdiction "for the care, promotion and protection of health.” (NY City Charter § 556 [a].) Nothing in law compels the conclusion that the Department of Health requires court permission or approval to execute its mandate under the City Charter. The Department of Health, by sending clear letters of warning, properly took action to limit the unlawful high-risk sexual activity without curtailing defendants’ motion picture business.
The question remains whether, between the warnings of the Department of Health and a preliminary injunction closing the Cinema, there lies a course of State action that would abate the nuisance without closing the Cinema. This court finds as a matter of fact that there is not. No principal of the Cinema offered a sworn affidavit or appeared at trial to testify *416 with respect to any proposal to eliminate the offending activity while remaining open. Instead, defendants offered the testimony of three employee-monitors denying the existence of offending activity, which this court finds not credible. Defendants’ counsel states in his memorandum: "[Defendants are prepared to comply with a full-time uniformed security officer and a full-time on-site manager and the sign.” However, the Cinema has already tried monitors, signs and pamphlets, and these efforts have not prevented the prohibited activity. Given the Cinema’s past inability to monitor itself, even after being put on notice that it was being watched, any scheme that would rely upon the Cinema to police itself ultimately requires the constant presence of City inspectors to ensure that the Cinema does not abdicate its responsibility as it has in the past. This is not a viable alternative. The only truly effective way to abate the nuisance at the Cinema is to close it.
Moreover, unlike Arcara (supra), the closing of the Cinema is motivated by the AIDS crisis, an epidemic of staggering proportions with no cure in sight. Unlike Arcara, life and death are at issue here. To require the police to arrest patrons of the Cinema under little-used criminal statutes would embrace form over substance. To first require injunctive relief in the face of the proven futility of any less intrusive solution would ignore the immediacy of the plague in our midst.
Finally, defendants oppose this action on the grounds that the licensed operator of the Cinema, 236 W. 54th St. Corp., was not initially named or served. Plaintiff initially misnamed this defendant as "New David Cinema Corp.,” believing it to be the operator of the Cinema. The licensed operator, 236 W. 54th St. Corp., was served by service upon the Secretary of State upon plaintiffs discovery of the error on or about April 3, 1995.
In any event, this court’s authority to abate the nuisance at the Cinema arises from its in rem jurisdiction over the premises, which are located in New York County. (Administrative Code § 7-706 [c]; see also, City of New York v Castro, 160 AD2d 651 [1st Dept 1990] [jurisdiction to abate gambling nuisance is in rem].) The Nuisance Abatement Law provides that the building where the public nuisance is being maintained be named (by block and lot number) as a defendant (Administrative Code § 7-706 [b]), together with one owner, as a way of providing the court with jurisdiction to abate the nuisance.
*417 Defendant argues that a necessary party has not been joined, pursuant to CPLR 1001, and that this court cannot grant any injunctive closing order. The "necessary party” in question, the Cinema operator, was initially named and served under an erroneous name, New David Cinema Corp. The misnaming of a defendant can be corrected through timely amendment of a caption of a summons or complaint pursuant to CPLR 305 (c), provided no substantial right of a party against whom the summons is issued is prejudiced, and the intended party was apprised that plaintiffs sought judgment against it (CPLR 305 [c]; Medina v City of New York, 167 AD2d 268 [1st Dept 1990]).
In the present case it is clear from the complaint whom plaintiffs intended to sue: the entity operating the Cinema. The corporate defendant was described in the caption as "d/b/a New David Cinema.” Raymond Dana, the president and sole stockholder of the actual operating corporation, 236 W. 54th St. Corp., was served on March 31, 1995. (Service on a corporation by one of its officers under CPLR 311 [1].) Furthermore, 236 W. 54th St. Corp. falls squarely within the "John Doe” category of defendant. Finally, upon learning the correct name of the operating corporations, plaintiffs served it with an amended summons and complaint. For the foregoing reasons, this court rejects defendants’ jurisdictional arguments.
Plaintiffs have shown by clear and convincing evidence that high-risk sexual activity occurred at the Cinema, causing a public nuisance such that the public health, safety and welfare requires the continued closing of the entire premises. Accordingly, plaintiffs’ motion is granted.