[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 17, 2002
THOMAS K. KAHN
CLERK

_____

No.  00-13147

_____

D. C. Docket No.  98-00997 CV-ORL-19A

JOE JOHN RODRIGUEZ,

Plaintiff-Appellee,

versus

WAYNE W. FARRELL,
LOIS SZCZEPANSKI,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(June 17, 2002)**

PETITION FOR REHEARING AND
SUGGESTION OF REHEARING EN BANC

Before EDMONDSON, Chief Judge, RONEY, Circuit Judge, and JORDAN*,
District Judge.

_____

*Honorable Adalberto J. Jordan, U.S. District Judge for the Southern District of Florida, sitting
by designation.

EDMONDSON, Chief Judge:

On interlocutory appeal from the district court's denial of qualified immunity to two police officers at the summary judgment stage, we reversed. Plaintiff, Joe John Rodriguez, has since filed a petition for rehearing and a suggestion for rehearing en banc. Although these filings do not cause us to change our conclusion, they do point to two portions of the record that deserve comment.

On the question of unreasonable seizure, Rodriguez points us to our discussion of his "brief detention" at the end of footnote 15 of our original opinion. He stresses that his transportation to the jail from which he was released (and his transportation back from that jail after he was released) took several -- roughly 18 total -- hours. The evidence shows that, shortly after his arrest at around one o'clock in the morning, Sgt. Farrell took Plaintiff to the local police station. Plaintiff stayed at the station for roughly two hours before he was transported by other officers, via one county jail were he stayed for some hours, to the jail of the county from which the outstanding warrant came. This final jail was "hours" away from the places of confinement to which Plaintiff was initially taken. After his release, Plaintiff was transported from the final jail and, at his request, was dropped off near his home between 7:00 and 8:00 pm that same day. No delay for delay's sake has been alleged or is supported by the evidence.

2

Assuming that the entire time of confinement was caused by Sgt. Farrell and Officer Szczepanski,[1] Plaintiff's journey to the jail in the county that issued the arrest warrant (even including his return from that jail), despite its extended nature, was still a "brief detention:" a reasonable detention incident to Plaintiff's lawful arrest. See generally County of Riverside v. McLaughlin, 111 S. Ct. 1661, 1670 (1991) (stating that delays of less than 48 hours for judicial determinations of probable cause are presumptively reasonable, unless detainee can prove that determination was delayed unreasonably, and noting that "[c]ourts cannot ignore the often unavoidable delays in transporting arrested persons from one facility to another" when determining reasonableness).

On the issue of excessive force, Rodriguez has highlighted evidence tending to show that after Sgt. Farrell grabbed Plaintiff's arm and commenced the handcuffing, Plaintiff told Sgt. Farrell, during the handcuffing, to be careful

---

[1]This assumption is likely wrong. For background, see Lindsey v. Storey, 936 F.2d 554, 563 (11th Cir. 1991) (affirming grant of summary judgment to defendant officer on plaintiff's wrongful continued detention claim where officer had arguable probable cause to arrest plaintiff and plaintiff had presented no evidence that defendant officer was responsible for inmates being promptly arraigned).

because Plaintiff's arm was injured.[2] And, Rodriguez stresses that, even if the initial handcuffing was not excessive, his continued handcuffing was excessive.

As we noted in our original opinion, a police officer need not credit everything a suspect tells him. See Marx v. Gumbinner, 905 F.2d 1503, 1507 n.6 (11th Cir. 1990). This idea is especially true when the officer is in the process of handcuffing a suspect. As another federal court recently noted, statements by suspects claiming (at the time of their arrest) to have pre-existing injuries are, "no doubt, uttered by many suspects who, if given the choice, would prefer not to be handcuffed at all and, if they must be restrained in that manner, would prefer that the handcuffs be in front." Caron v. Hester, No. CIV. 00-394-M, 2001 WL 1568761, at *8 (D.N.H. Nov. 13, 2001) (granting officer, who handcuffed suspect behind suspect's back, qualified immunity on excessive force claim despite officer's alleged knowledge -- based upon suspect's testimony that he told the officer -- of suspect's pre-existing injury when "[the officer] was not confronted

---

[2]In his deposition, Plaintiff testified that he screamed in pain and screamed that his arm was hurting when Sgt. Farrell applied the pain compliance handcuffing technique described in our original opinion. Also in that deposition, Plaintiff unequivocally states that, even after the handcuffing began: "I didn't even tell him then [that my arm was specifically injured], I was just telling him that he was hurting my arm." In contrast, Sgt. Farrell testified in his deposition that he simply handcuffed Plaintiff behind his back: he denies applying any pain compliance handcuffing technique when arresting Plaintiff or that Plaintiff screamed, in pain or otherwise. But, Sgt. Farrell does note that Plaintiff did ask him to be careful after Farrell started the handcuffing because his (Plaintiff's) arm was injured. We take the best set of facts for Plaintiff.

4

with any objective manifestation of [the suspect's] claimed shoulder problem"). In the context of this case -- a case in which Sgt. Farrell, after midnight on the side of the road, reasonably believed that Plaintiff (who, as we discussed in our original opinion, had no obvious signs of injury specifically to his arm) was a fugitive who had evaded capture, Sgt. Farrell's alleged discounting of Plaintiff's arm-injury claim (a claim not made until after Sgt. Farrell began to arrest Plaintiff despite the fact that he had been in Sgt. Farrell's company for roughly 30 minutes when the handcuffing began) was reasonable.[3] Cf. Jackson v. City of Bremerton, 268 F.3d 646, 652 (9th Cir. 2001) (in arrest for failing to disperse, pushing suspect to the ground and kneeling on her back not excessive force despite fact that suspect informed officer of her pre-existing back and shoulder injuries); Morreale v. City of Cripple Creek, No. 96-1220, 1997 WL 290976, at *1, 5-6 (10th Cir. May 27, 1997) (in arrest for driving with a suspended license, milder handcuffing of suspect behind her back not excessive force despite suspect's request that she be handcuffed in front to avoid aggravating pre-existing shoulder injury).

---

[3]Sgt. Farrell did see that Plaintiff had medical records and prescription drugs with him. And, before the arrest began, Plaintiff claims that he told Sgt. Farrell that Plaintiff had recently been released from a hospital after a motorcycle accident.

Perhaps, if Plaintiff, before the physical part of the arrest began, had also told Sgt. Farrell that Plaintiff's arm was injured, we would be more inclined to conclude that the Constitution required Sgt. Farrell to credit that statement. But, that is not what occurred here.

That Plaintiff's handcuffs were not removed until about fifteen minutes after his initial handcuffing does not transform what is otherwise a meritless handcuffing-based excessive-force claim into a valid <u>continued</u> handcuffing-based excessive-force claim. <u>See</u> <u>Morreale</u>, 1997 WL 290976, at *1 (plaintiff was handcuffed for twenty minutes while transported to station, during which time plaintiff complained of wrist pain from handcuffing: not excessive force). Plaintiff admits that he -- even after the handcuffing -- never asked Sgt. Farrell to handcuff him in front of his body, instead of behind his back. Nor did Plaintiff ask Sgt. Farrell to remove the handcuffs altogether. And, Plaintiff admits that he never asked Sgt. Farrell for medical assistance.[4] Furthermore, there is no evidence of delay for delay's sake during the time Plaintiff was kept handcuffed.

Plaintiff's petition for rehearing is DENIED. And, no judge of the Court having requested a poll, Plaintiff's suggestion for rehearing <u>en</u> <u>banc</u> is DENIED.

---

[4]Plaintiff did testify that he moaned or grunted in pain while in transport to the police station and that, once at the station, told Sgt. Farrell that he was in pain. And, evidence tends to show that Plaintiff asked that his medications be brought with him from the scene of the arrest.