**Paula Anne ESMONT, Plaintiff,**

v.

**CITY OF NEW YORK et al., Defendants.**

**No. CV025560CPS.**

United States District Court, E.D. New York.

March 16, 2005.

---

Jennifer C.E. Ajah, Law Office of Jennifer Ajah, Jamaica, NY, for Plaintiff.

Jennifer Ann Vazquez, NYC Law Department, Pamela Lynam Mahon, Corpo-

ration Counsel of the City of NY, New York City, for Defendants.

## MEMORANDUM AND ORDER

SIFTON, Senior District Judge.

Plaintiff Paula Anne Esmont brings this action against the City of New York, Mohamed Soliman, Jackie Ronayne,[1] and Colleen Brady, pursuant to 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the United States Constitution. The complaint alleges the following five claims for relief against all defendants: 1) false arrest and imprisonment; 2) malicious prosecution; 3) a claim for municipal liability for the acts of its agents; 4) excessive force; and 5) invasion of privacy. Presently before the Court is defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, Esmont's motion to strike the defendants' answer to the amended complaint pursuant to Rule 37(d)[2], and Esmont's cross-motion for summary judgment pursuant to Rule 56.

For the reasons that follow, the plaintiff's motions for summary judgment and to strike the defendants' answer are denied. Summary judgment is granted in favor of the defendants on all claims for relief.

### Background

The following facts are taken from the Local Rule 56.1 statements, depositions, and affidavits submitted by the parties. They are undisputed except where noted.[3]

At the time of her arrest, Esmont was fifty-seven years old. She lived in Woodhaven in a house owned by her son, Robert Esmont. Prior to her arrest, Esmont kept as many as nineteen dogs at the house at a time. Esmont did not walk the dogs, but instead placed newspaper on the floor upon which the animals relieved themselves. This resulted in complaints by neighbors regarding odors and debris, letters from the New York City Department of Health, and multiple inspections.

On June 29, 2001, the Commissioner of the New York City Department of Health issued an order informing Esmont that the condition of her yard constituted a nuisance as defined in New York City Administrative Code § 17–142,[4] and a violation of

1. The complaint incorrectly identifies Ronayne as "Rainer."

2. In her notice of motion, Esmont purports to move pursuant to Rule 56 for an order dismissing the defendants' motion for summary judgment, dismissing the defendants' "complaint," and granting summary judgment to Esmont. The notice of motion somewhat confusingly specifies as the grounds for granting her cross-motion for summary judgment that "defendants have failed to convince this court that they are entitled to Summary Judgment against plaintiff and there are genuine issues of material fact that warrant a trial."

3. Esmont's response to defendants' Local Rule 56.1 statement of material facts consists largely of legal argument and denials unsupported by citation to the record. Local Rule 56.1 requires the non-moving party to cite to admissible evidence to controvert the moving party's supported assertion of material fact. *Soriano ex rel. Garcia v. Bd. of Educ. of City of New York*, 2004 WL 2397610, at *2 n. 5 (E.D.N.Y. Oct. 27, 2004). To the extent that the Court is able to ascertain from the record the basis for Esmont's unsupported denials, the Court will do so. Some of the denials are, however, inexplicable. For example, in her response, Esmont denies, without citation to contrary evidence, that she had erected a gate in front of her driveway and that her yard abutted railroad tracks. (Plaintiff's Response to Defendant's Local Rule 56.1 Statement ¶¶ 20, 34.) This information is, however, taken directly from Esmont's own description of her yard in her deposition.

4. New York City Administrative Code § 17–142 states:

The word "nuisance", shall be held to embrace public nuisance, as known at com-

the New York City Health Code §§ 3.11,[5] 151.03,[6] and 151.05.[7] The order further instructed Esmont that city health officials would return in five days to conduct a compliance inspection and abate the nuisance if Esmont had not done so herself.

New York Department of Health employees Mohamed Soliman and Jackie Ronayne went to Esmont's house at 10:00 a.m. on July 16, 2001, to conduct the compliance inspection. Soliman testified that because he anticipated difficulty with Esmont, he requested that police be present during the inspection. Officer Colleen Brady and Lieutenant Messina of the NYPD accompanied Soliman and Ronayne.

When the defendants arrived, Esmont was standing in front of the gate of her driveway.[8] Soliman showed Lieutenant Messina a copy of the New York City Health Code and the notices sent to Esmont. Officer Brady asked Esmont to open the gate leading to her house and yard, and to step aside to permit the inspection. Esmont refused. Lieutenant Messina ordered Brady to arrest Esmont.

Brady rear handcuffed Esmont and placed her in the back of a squad car. Esmont states that she banged her head upon being placed in the car. Esmont testified that she was held in the back of the car for ten minutes and that the inside

mon law or in equity jurisprudence; whatever is dangerous to human life or detrimental to health; whatever building or erection, or part or cellar thereof, is overcrowded with occupants, or is not provided with adequate ingress and egress to and from the same or the apartments thereof, *or is not sufficiently supported*, ventilated, sewered, drained, cleaned or lighted in reference to its intended or actual use; and whatever renders the air or human food or drink, unwholesome. All such nuisances are hereby declared illegal.

5. Section 3.11 of the Health Code states:

No person shall commit or maintain a nuisance as defined in § 17–142 of the Administrative Code, and no person shall allow such a nuisance to exist or to be created in respect of any matter, thing, chattel or premises which he owns or controls.

6. Section 151.03 of the Health Code states in part:

(a) All buildings, lots, premises or commercial vehicles shall be kept free from rodents, insects and other pests, and from any condition conducive to rodent or insect and other pest life. The person in control shall not allow the accumulation of water, garbage or any other waste material in any part of the building, lot, premises or commercial vehicle. All garbage shall be deposited in tightly covered, watertight metal cans.

(b) When any building, lot, premises or commercial vehicle is subject to infestation by rodents or insects and other pests, the person in control shall apply continuous eradication measures.

(c) When the Department makes the determination that a building, lot, premises or commercial vehicle is infested by rodents, insects or other pests, it may order the person or persons in control to take such eradication measures as the Department considers necessary. Without limiting the authority of the Department, the Department of Buildings may exercise the same power with respect to resident premises.

7. Section 151.05 of the Health Code states:

All building material, lumber, boxes, cartons, barrels, containers, machinery, raw material, fabricated goods, junk, food, animal feed and any other substance which may afford harborage or provide food for rodents or insects and other pests shall be kept, stored or handled in such manner as the Department, or with respect to residential premises, the Department or the Department of Buildings, may require. Structural harborages which cannot be eliminated shall be periodically uncovered and inspected.

8. Esmont testified that a chain link fence separated Esmont's property from her neighbors' on two sides. The back of the yard abutted railroad tracks. The front of the yard contained a gate across the driveway, but was not fenced.

of the car was hot, causing her to sweat profusely.

Esmont was brought to the 102nd precinct to be processed. Esmont testified that she was handcuffed to a cross bar during the duration of her stay with no place to rest her elbow, the bathroom she was required to use was monitored by a security camera, and that Officer Brady insisted on watching her while she used the bathroom. Esmont testified that she was held in custody approximately 7½ hours before being released.

Esmont testified that while in custody, she suffered an asthma attack. Although Esmont had been diagnosed with asthma many years before, she did not use or carry medication. Instead of medication, she requested a cup of hot tea, which she did not receive. An officer called emergency medical services, but Esmont refused treatment after she was told that a trip to the hospital might delay her release. She was eventually released with a desk appearance ticket.

Upon release, Esmont states that she sought medical treatment two days after her release for damage to her wrist caused by the handcuffing. She states that the doctor gave her a "half cast," which she wore for a week. The report from the physician who X-rayed her wrist states, "Views of the left wrist demonstrate no fracture, dislocation or effusion. The osseous structures are intact. There is no evidence of arthritis. The soft tissues are normal." (Def. Ex. M.) Esmont testified that her wrist was not dislocated or lacerated, and that she missed no work as a result. She testified that she suffers from diminished use of her left hand, but has not sought additional medical treatment.

Esmont states that she was arraigned in Queens Criminal Court on charges that she violated New York Penal Law § 195.05, obstructing governmental admin-istration in the second degree. Esmont testified that the prosecution required her to appear in court eight times, but the charges were eventually dismissed by the District Attorney.

## Discussion

Summary judgment is appropriate "[w]hen the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rule 56 of the Federal Rules of Civil Procedure provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as matter of law." FED. R. CIV. PRO. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Elec. Inspectors, Inc. v. Vill. of E. Hills,* 320 F.3d 110, 117 (2d Cir.2003). A fact is material when it "might affect the outcome of the suit under the governing law." *Id.*

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *Apex Oil Co. v. DiMauro,* 822 F.2d 246, 252 (2d Cir.1987). In order to defeat such a motion, the non-moving party must raise a genuine issue of material fact. Although all facts and inferences therefrom are to be construed in the light most favorable to the non-moving party, the non-moving party must raise more than a metaphysical doubt as to the material facts. *See Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348; *Harlen Assoc. v. Vill. of Mineola,* 273 F.3d 494, 498 (2d Cir.2001). The non-moving

party may not rely on conclusory allegations or unsubstantiated speculation. *Twin Labs., Inc., v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir.1990). Rather, the non-moving party must produce more than a scintilla of admissible evidence that supports the pleadings. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289–90, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir.2003).

The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir.2000).

To recover on her 42 U.S.C. § 1983 claims, Esmont must show that the defendants acted under color of state law and that she was deprived of a right secured by the Constitution or laws of the United States. *Palmieri v. Lynch*, 392 F.3d 73 (2d Cir.2004). The parties do not dispute that the defendants were acting under color of state law.

*First Claim: False Arrest*

False arrest claims brought pursuant to 42 U.S.C. § 1983 borrow their elements from the law of the state in which the arrest occurred. *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir.2004). To establish a claim of false arrest under New York law, a plaintiff must show that the defendant intentionally confined her without justification or consent. *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir.2004). Probable cause to arrest the plaintiff provides such justification. *Id.* Probable cause exists

where the officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.* (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996)). Probable cause is an objective matter and does not depend on the subjective biases of the arresting officer. *Whren v. United States*, 517 U.S. 806, 812–13, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

■■■ Defendants contend that Brady had probable cause to believe that Esmont was obstructing governmental administration in the second degree in violation of New York Penal Law § 195.05, which states:

> A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act . . . .

The elements of the offense are: 1) intent; 2) obstruction or impairment of a government function, or preventing or attempting to prevent the performance of that function by 3) physical interference. *People v. Stumpp*, 129 Misc.2d 703, 493 N.Y.S.2d 679, 680 (1985). Probable cause to arrest for a violation of § 195.05 may be predicated on, amongst other things, obstructing a lawful search. *Id.* Resisting an illegal search does not, however, constitute a violation of the statute. *See People v. Vogel*, 116 Misc.2d 332, 457 N.Y.S.2d 666, 667 (1982); *People v. Joseph*, 156 Misc.2d 192, 592 N.Y.S.2d 238, 240 (1992).[9]

---

9. Although the defendants do not purport to rely on the argument, the Court notes that

In the case at bar, defendants arrested Esmont after she refused to move from her driveway to permit New York Department of Health employees to enter her yard to perform a compliance inspection. Esmont contends that her obstruction did not violate the statute because the government officials lacked a warrant to enter her land and she was therefore obstructing an illegal search.

██ Entries onto private property by government officials to seek out or abate public nuisances, like searches pursuant to a criminal investigation, are governed by the warrant requirement of the Fourth Amendment. *Michigan v. Tyler*, 436 U.S. 499, 504–05, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978) ("The officials may be health, fire, or building inspectors. Their purpose may be to locate and abate a suspected public nuisance, or simply to perform a periodic inspection.... These deviations from the typical police search are thus clearly within the protection of the Fourth Amendment."). Where a warrant is required, the landowner cannot be prosecuted for refusing to permit the search. *Camara v. Municipal Court*, 387 U.S. 523, 540, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967).

█ The Fourth Amendment, however, does not require that all entries onto private land be accompanied by a warrant or probable cause. *United States v. Dunn*, 480 U.S. 294, 304, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987) (holding that no Fourth Amendment violation occurs where officers cross "open fields"); *Oliver v. United States*, 466 U.S. 170, 183, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984) (trespass onto open field does not necessarily constitute a "search"); *Palmieri*, 392 F.3d 73 (applying "special needs" exception to conclude that a trespass was not actionable under § 1983). "The Fourth Amendment protects legitimate expectations of privacy, not simply places." *Illinois v. Andreas*, 463 U.S. 765, 771, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983). The Fourth Amendment protects a person's privacy interest only in those areas where he or she has a "constitutionally protected reasonable expectation of privacy." *Katz v. U.S.*, 389 U.S. 347, 360, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984).

██ Such an expectation can be established if the plaintiff shows that the yard was part of the curtilage of her home. *United States v. Reilly*, 76 F.3d 1271, 1275 (2d Cir.1996). The extent of the homeowner's curtilage is determined by factors relevant to whether she reasonably expects the area to be treated "as the home itself." *Dunn*, 480 U.S. at 300, 107 S.Ct.

---

Brady may have had probable cause to arrest Esmont for violating Section 3.11 of the Health Code, which prohibits maintaining a public nuisance. The New York City Charter states in part "Any violation of the Health Code shall be treated and punished as a misdemeanor." NEW YORK CITY CHARTER § 558. The New York City Health Code § 3.07 also grants the Commissioner of the Department of Health the power to issue orders, the violation of which may subject the violator to criminal penalties. *See, e.g., City of New York v. Dana*, 165 Misc.2d 409, 627 N.Y.S.2d 273, 276–77 (1995). Although neither party raises the issue, the Court notes that the Supreme Court has recently unanimously ruled that probable cause to arrest exists when the officer has probable cause to believe the arrestee has committed any offense, not merely the offense identified at booking or the time of arrest. *Devenpeck v. Alford*, —— U.S. ——, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004); *see also Atwater v. City of Lago Vista*, 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001) (no Fourth Amendment violation where officer has probable cause to believe the arrestee committed even an extremely minor offense in his presence).

1134. Those factors include, but are not limited to: 1) the proximity of the land to the home; 2) whether the area is enclosed; 3) the nature of the uses it is put to; and 4) the steps taken to protect the area from observation. *Id.* at 301, 107 S.Ct. 1134. Areas of a plaintiff's land knowingly exposed to the public are not, however, protected by the Fourth Amendment. *California v. Ciraolo,* 476 U.S. 207, 213, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986).

■■■■■ Esmont concedes and the undisputed evidence establishes that the yard was exposed to public view. (*See* Plaintiff's Memo. 16 (stating that the yard was "in full view of the streets and rail road tracks.")) Other than the gate that Esmont refused to open, the front of her property was not fenced and was viewable from the street. (Esmont Dep. 89.) Esmont presents no evidence that she engaged in any intimate activities in the yard. It is therefore clear that Esmont did not manifest a subjective expectation of privacy in her yard. Unobstructed, open areas in front of a residence are not entitled to Fourth Amendment protection. *United States v. Smith,* 783 F.2d 648, 652 (6th Cir.1986); *see also United States v. Reyes,* 283 F.3d 446, 466–67 (2d Cir.2002) (no "search" where officers enter a driveway across which a chain was hung); *United States v. Williams,* 219 F.Supp.2d 346, 360 (W.D.N.Y.2002) (no expectation of privacy in driveway exposed to public); *United States v. Hogan,* 122 F.Supp.2d 358 (E.D.N.Y.2000) (yard in close proximity to house not part of curtilage where it is exposed to public view and no evidence that intimate activities associated with domestic life occurred there). The undisputed facts therefore establish that a warrant

was not required to enter Esmont's yard and the warrantless entry did not violate the Fourth Amendment.

■■■■■ Because the search was not unlawful, Esmont would not have been entitled to the defense of "obstructing an illegal search" and the defendants had probable cause to arrest her for violating New York Law § 195.05.[10] Summary judgment in favor of all defendants is therefore appropriate on Esmont's first claim for relief.

*Second Claim: Malicious Prosecution*

■■■■ Malicious prosecution claims brought pursuant to § 1983 borrow their elements from state law. *Washington v. County of Rockland,* 373 F.3d 310, 315 (2d Cir.2004). The elements of a claim for malicious prosecution under New York law are: 1) the defendant initiated the criminal proceeding; 2) the proceeding terminated favorably for the plaintiff; 3) there was no probable cause to believe the charge could succeed; and 4) the defendant acted maliciously. *Rothstein v. Carriere,* 373 F.3d 275, 282 (2d Cir.2004). Defendants contend that Esmont cannot establish elements three or four.

*Probable Cause*

■■■■ Probable cause in the malicious prosecution context means "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Boyd v. City of New York,* 336 F.3d 72, 76 (2d Cir.2003). Probable cause to prosecute is not always identical to probable cause to arrest. *Posr v. Court Officer Shield No. 207,* 180 F.3d 409, 417 (2d Cir.1999). Nevertheless, the same undisputed facts that establish probable

---

10. Esmont does not contend that any provision other than the Fourth Amendment rendered the search unlawful. The Court notes, however, that entries onto private land by public officers authorized to abate public nuisances are privileged against trespass actions at common law. Restatement (Second) Torts §§ 202, 211.

cause to arrest in this case also establish probable cause to prosecute. The defendants observed Esmont obstructing Department of Health inspectors from performing a compliance inspection. For the reasons previously stated, the undisputed evidence establishes that the search was lawful. Defendants therefore had probable cause to believe Esmont guilty of the offense.

*Third Claim: Monell Liability*

 The complaint alleges as a third claim that the City of New York is liable under a theory of respondeat superior. A city, however, cannot be held liable for violations of 42 U.S.C. § 1983 under any general theory of respondeat superior. *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 125 (2d Cir.2004). Rather, pursuant to *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), a municipality can be held vicariously liable for the unconstitutional acts of its agents only where "the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation, or decision officially adopted and promulgated by that [municipality's] officers" or is conducted "pursuant to governmental 'custom' even though such custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690–91, 98 S.Ct. 2018.

 Esmont contends that the City should be held liable for its failure to train its employees. Inadequacy of police training may be a basis for *Monell* liability where the failure to properly train amounts to deliberate indifference to constitutional rights. *City of Canton, Ohio v. Harris,* 489 U.S. 378, 390–91, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). A plaintiff proceeding on such a theory must establish that: 1) the city failed to adequately train its employees; 2) that failure caused the plaintiff's injury; 3) a policymaker knows that the employee will confront a given situation; 4) the situation presents the employee with one that training will make less difficult or that there is a history of employees mishandling the situation; and 5) the wrong choice frequently causes the deprivation of constitutional rights. *Walker v. City of New York,* 974 F.2d 293 (2d Cir.1992); *Jeffes v. Barnes,* 208 F.3d 49, 61 (2d Cir.2000).

 Esmont has presented no evidence that the City of New York fails to train its employees adequately in any respect. Where the plaintiff presents no evidence of a training deficiency other than her own claims for relief, summary judgment is appropriate. *Amnesty America v. Town of West Hartford,* 361 F.3d 113, 130 (2d Cir.2004). The failure to identify a specific deficiency in the city's training program and provide evidence that the deficiency caused the plaintiff's injury requires summary judgment for the City on all claims for relief.

*Fourth Claim: Excessive Force*

Esmont testified that she was in the back of the hot, unventilated police car for ten minutes, which caused her to sweat profusely. She further testified that the handcuffs Officer Brady placed on her were very tight and she was left handcuffed to her cell for 7½ hours. The handcuffs, Esmont testified, caused bruising and swelling of her left wrist, for which she sought medical treatment. The doctor gave her a "half-cast," which she wore for one week. Although Esmont testified that she suffered permanent diminished use of her left hand, she has not sought additional medical treatment or presented other

evidence of permanent injury.[11]

*Force at Time of Arrest*

 Civil rights claims under § 1983 for excessive use of force in connection with an arrest are governed by the "objective reasonableness" standard of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Whether the force used in connection with the arrest is reasonable depends on a careful weighing of the facts of each particular case, including whether the suspect poses a threat, resists, or attempts to evade arrest, and the severity of the crime at issue. *Id.* at 396, 109 S.Ct. 1865. " 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers' violates the Fourth Amendment." *Id.* (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973)).

All of these factors suggest that only a minimal amount of force was reasonably necessary to effect the arrest. The defendants present no evidence that Esmont posed a threat, resisted arrest, or attempted to flee. To the contrary, the undisputed evidence establishes that she was a fifty-seven year old woman, and rather than attempting to flee, she refused to move from her position before being arrested. The crime with which she was charged is indisputably minor.

*Bump on Head*

 Esmont testified that because Officer Brady did not place her hand on Esmont's head as she was placed in the back of the squad car, Esmont's head struck the roof of the car. (Esmont Dep. 197.) The only injury Esmont testified that she suffered as a result was a headache. (Esmont Dep. 196.) Not every infliction of pain reaches the infliction of a

constitutional violation. *Schy v. State of Vermont*, 2 Fed.Appx. 101, 102–03, 2001 WL 40757 *2 (2d Cir.2001). Viewed in the light most favorable to Esmont, this evidence does not give rise to a claim of excessive force. Defendants are accordingly entitled to summary judgment on Esmont's excessive force claim to the extent it is based on bumping Esmont's head on the squad car.

*Hot Car*

 Leaving a suspect in a hot, unventilated squad car for a lengthy period of time can give rise to a Fourth Amendment violation. *Burchett v. Kiefer*, 310 F.3d 937, 945 (6th Cir.2002). Evidence that the suspect was left in the back of the unventilated car for three hours, for example, is sufficient to state a claim of excessive force. *Id.* One-half hour in a hot car, however, generally is not. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir.2001). Esmont testified that she was left in the squad car for merely ten minutes and does not contend that she suffered any physical injury as a result. Defendants are therefore entitled to summary judgment to the extent that Esmont's claim is based on being left in the unventilated squad car.

*Handcuffing*

 It is well established that the right to make an arrest accompanies with it the right to use some degree of physical coercion. *Graham*, 490 U.S. at 396, 109 S.Ct. 1865. Frequently, a reasonable arrest involves handcuffing the suspect, and to be effective handcuffs must be tight enough to prevent the arrestee's hands from slipping out. *Cavazos v. Voorhies*, 00–C–7929, 2002 WL 31017492, at *3 (N.D.Ill. Sept. 9, 2002). Placing handcuffs

---

**11.** None of the parties present evidence concerning whether Esmont asked any of the defendants to loosen the handcuffs.

on an arrestee tight enough to cause nerve damage may, however, constitute excessive force in violation of the Fourth Amendment. *See, e.g., Kopec v. Tate,* 361 F.3d 772, 777 (3d Cir.2004); *Lucky v. City of New York,* 03 Civ.1983, 2004 WL 2088557, at *7 (S.D.N.Y. Sept. 20, 2004); *Simpson v. Saroff,* 741 F.Supp. 1073, 1078 (S.D.N.Y. 1990). *Contra Carter v. Morris,* 164 F.3d 215, 219 n. 3 (4th Cir.1999) (claim based on tight handcuffing "is so insubstantial that it cannot as a matter of law" give rise to a Fourth Amendment violation). The reasonableness of the handcuffing of an arrestee must be determined in light of the minimal amount of force necessary to maintain custody of Esmont. *See Santos v. Gates,* 287 F.3d 846, 854 (9th Cir.2002). In addition, in evaluating the reasonableness of handcuffing, a Court is to consider evidence that: 1) the handcuffs were unreasonably tight; 2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists. *See, e.g., Burchett,* 310 F.3d at 944–45; *Glenn v. City of Tyler,* 242 F.3d 307, 314 (5th Cir.2001) (plaintiff must show more than *de minimis* injury).

Esmont has failed to present evidence that she requested that her handcuffs be loosened. There is therefore no evidence that any defendant[12] unreasonably ignored her complaints of pain. Neither Esmont nor the Court's research reveals any cases permitting a plaintiff to establish an excessive force claim based on tight handcuffing in the absence of a request to loosen them. *See, e.g., Kopec,* 361 F.3d at 780 n. 9 (Smith, J., dissenting) (collecting cases em-phasizing that arrestee must present evidence that officer failed to respond to requests to loosen handcuffs); *Rodriguez v. Farrell,* 294 F.3d 1276, 1278 (11th Cir. 2002) (granting summary judgment to officer where plaintiff never requested that handcuffs be loosened); *Johari v. City of Columbus Police Dept.,* 186 F.Supp.2d 821, 829 (S.D.Ohio 2002) (granting summary judgment for officer and noting that officer was unaware that handcuffs caused arrestee pain).

The only evidence Esmont has offered suggesting injury is her testimony that she suffers diminished use of her left wrist. She submits no medical evidence verifying this claim. Although she visited a doctor after her release, she waited two days to do so, and the report from the physician who X-rayed her wrist states "Views of the left wrist demonstrate no fracture, dislocation or effusion. The osseous structures are intact. There is no evidence of arthritis. The soft tissues are normal." (Def.Ex. M.) Esmont testified that her wrist was not dislocated or lacerated, and that she missed no work as a result. (Esmont Dep. 221–22.) In addition, Esmont refused medical attention for her asthma attack while in custody. *Cf. White v. Md. Transp. Auth.,* 151 F.Supp.2d 651 (D.Md.2001) (noting that arrestee refused treatment for panic attack while in custody, which suggests lack of physical injury from handcuffs). Unsubstantiated claims of nerve damage, in the absence of corroborating medical evidence, are insufficient to support a claim of excessive force from handcuffing.[13]

---

**12.** Although Esmont presents no evidence that Ronayne or Soliman played a role in her handcuffing, the excessive force claim is pled against all defendants. Neither Ronayne or Soliman contend that they are entitled to summary judgment on the ground that they did not effect Esmont's arrest. Because the parties have not addressed the issue, the Court declines to grant summary judgment for Ronayne or Soliman on this ground sua sponte.

**13.** *See, e.g., Foster v. Metropolitan Airports Commission,* 914 F.2d 1076, 1082 (8th Cir. 1990); *Palmer v. Unified Government of Wyandotte,* 72 F.Supp.2d 1237, 1247–48

### Force while in Custody

Esmont testified that she was in custody for approximately 7 ½ hours. For about seven of those hours, she was handcuffed to the outside of a cell. During at least part of that period, the cell was occupied by a male prisoner. (Esmont Dep. 204.) Brady testified that the station had one cell. Her practice was not to place male and female prisoners in a single cell together. When prisoners of opposite sex were in custody, one would be handcuffed to the outside of the cell. (Brady Dep. 33–35.)

■ The same standard applies to excessive force claims raised by pretrial detainees as those raised by convicted prisoners under the Eighth Amendment. *United States v. Walsh,* 194 F.3d 37, 48 (2d Cir.1999). To establish a constitutional claim of excessive force while in custody, a detainee must satisfy both an objective component (that the use of force was objectively serious) and a subjective component (that the defendant acted with a culpable state of mind associated with the unnecessary, wanton infliction of pain). *Walsh,* 194 F.3d at 49–50.

■ Esmont's claim of excessive force while in custody fails because she has proffered no evidence to satisfy the subjective element of the Eighth Amendment test. The subjective component requires evidence that the defendant had reason to know of facts creating a high risk of physical harm and acted or failed to act with conscious disregard or indifference to that risk. *Bryant v. Maffucci,* 923 F.2d 979, 985 (2d Cir.1991). Wantonness is judged,

not by the effect the conduct has on the plaintiff, but rather "upon the constraints facing the *official.*" *Davidson v. Flynn,* 32 F.3d 27, 30 n. 2 (2d Cir.1994) (emphasis in original). Where no legitimate penological purpose can be inferred from the defendant's conduct, the abuse itself may be sufficient to establish the subjective prong. *Boddie,* 105 F.3d at 861.

■ Esmont has presented no evidence that Officer Brady acted with an improper or wanton motive, that Brady deliberately placed the cuffs on too tightly, or that Esmont ever complained to Brady that she was suffering any discomfort. In addition, Esmont was offered, but declined, medical treatment for her asthma attack. The only evidence the parties have proffered concerning Brady's motive for handcuffing Esmont to the outside of the cell is Brady's testimony that prisoners of opposite sexes were not ordinarily placed in a single cell and Esmont's testimony that a male prisoner was in the cell that day. No reasonable jury could therefore conclude that there was anything but a legitimate penological justification for Brady's actions.

### Fifth Claim: "Invasion of Privacy"

Esmont's fifth claim for relief alleges that defendants invaded her privacy when they entered her yard without a warrant and because she was not permitted to use the bathroom in private while in detention. Liberally construed, the complaint alleges a claim that the defendants' entry onto her property violated the Fourth Amendment

(D.Kan.1999) (granting summary judgment to officer where the only evidence of injury caused by handcuffing is plaintiff's deposition testimony); *cf. Kopec,* 361 F.3d 772 (denying officer's motion for summary judgment where arrestee was treated by hand surgeon for over one year as a result of handcuffing); *Gonzalez*

*v. City of New York,* 98–CV–3084, 2000 WL 516682 (E.D.N.Y. March 7, 2000) (denying summary judgment where plaintiff presented expert testimony that he suffered permanent injury from handcuffs and plaintiff requested that handcuffs be loosened).

and a claim challenging the condition of her pre-arraignment detention.

### Search of the Yard

For the reasons previously stated, the undisputed facts establish that Esmont did not have a subjective or reasonable expectation of privacy in her yard. The entry therefore did not violate the Fourth Amendment, and defendants are entitled to summary judgment on Esmont's claim that the entry violated the Fourth Amendment.

### Bathroom Privacy

Esmont testified that she was denied private bathroom facilities, that Officer Brady, who is also female, accompanied her during her visit to the restroom, and that a security camera monitored the bathroom.

 The Fourteenth Amendment provides detainees at least as much protection from cruel detention conditions as the Eighth Amendment affords convicted prisoners. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983). Under the due process clause, state officials may subject a pretrial detainee to restrictions that are inherent to confinement in a detention facility so long as they do not amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

Courts considering challenges to the conditions of pretrial detention must therefore first determine whether the condition is punitive. *Benjamin v. Fraser*, 343 F.3d 35, 50 (2d Cir.2003). The issue in whether a disability is punishment depends on whether it is imposed for the purpose of punishment or some other legitimate interest. *Bell*, 441 U.S. at 538, 99 S.Ct. 1861. That determination usually turns on whether the restriction is reasonably related to a legitimate purpose and whether it is excessive in relation to that purpose.

*Id.* The question is not whether less restrictive alternatives were available. *Valentin v. Murphy*, 95 F.Supp.2d 99, 103 (D.Conn.2000). Institutional security and effective management of the facility are legitimate objectives. *Id.* at 540, 99 S.Ct. 1861.

 The failure to provide Esmont with privacy while using the bathroom does not rise to the level of a constitutional violation because it was reasonably related to maintaining the security of the detention facility. The Seventh Circuit has, for example, held that monitoring of pretrial detainees while they are in the shower, even if conducted by guards of the opposite sex, does not rise to the level of a constitutional violation. *Johnson v. Phelan*, 69 F.3d 144, 146 (7th Cir.1995) (approving of surveillance of showers and toilets in jail). Defendants are therefore entitled to summary judgment on Esmont's fifth claim for relief to the extent that it is based on the lack of bathroom privacy.

### Deliberate Indifference to Medical Needs

The defendants move for summary judgment on any claim that Esmont may have that they showed deliberate indifference to her medical needs when she suffered an asthma attack while in custody. The complaint, however, alleges no such claim for relief. Nevertheless, all parties have briefed the issue. When both parties squarely address a claim in their summary judgment briefs, it may be argued that the complaint was constructively amended pursuant to Federal Rule of Civil Procedure 15(b). *Handzlik v. United States*, 93 Fed.Appx. 15 (5th Cir.2004); *Whitaker v. T.J. Snow Co.*, 151 F.3d 661, 663 (7th Cir.1998); *Kulkarni v. Alexander*, 662 F.2d 758, 762 (D.C.Cir.1978).

Defendants move for summary judgment on Esmont's claim that by calling emergency medical services instead of providing her with hot tea in response to her asthma attack, defendants demonstrated deliberate indifference to the medical needs. Defendants contend that because Esmont concedes that they provided emergency medical services, the undisputed evidence establishes that they did not show deliberate indifference to her medical needs.

 "Deliberate indifference" claims under § 1983 are grounded in the due process clause of the Fourteenth Amendment. *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir.1996). A custodian of a non-convicted detainee may be found liable for violating the detainee's due process rights if the official denied treatment needed to remedy a serious medical condition and did so because of deliberate indifference to the medical need. *Id.* Deliberate indifference may be shown by evidence that the official acted with reckless disregard for a substantial risk posed by the medical condition. *Id.*

 The evidence does not support a finding of deliberate indifference. When informed that Esmont was suffering from an asthma attack, defendants provided emergency medical services and offered to take her to the hospital. Esmont declined these offers and insisted that the only treatment she wanted was a cup of hot tea. Merely because defendants denied Esmont her preferred homeopathic form of treatment for her asthma, and instead

provided medical services, does not raise an inference that the defendants acted with reckless disregard. Defendants are accordingly entitled to summary judgment on Esmont's claim of deliberate indifference to medical needs.

### Esmont's Rule 37(d) Motion

In her response to the defendants' motion for summary judgment, Esmont moves pursuant to Federal Rule of Civil Procedure 37(d) to strike the defendants' answer to the complaint in its entirety. Esmont stated that the motion should be granted because the defendants' summary judgment motion fails to disprove the allegations in the complaint. Rule 37(d) pertains to sanctions for the failure to appear at a deposition or otherwise respond to a discovery request.[14] Esmont does not contend that the defendants have failed to comply with discovery. Nor does she cite any explanation, case law, or other justification for granting the motion. She merely contends that "it is impossible for the Court to fashion appropriate relief, other than dismissing/striking the defendants [sic] pleadings, or entering an Order precluding the defendants from offering any evidence in support of each and every one of their Affirmative defenses contained therein at trial."

Local Rule 7.1 requires that a motion be supported by a "memoranda of law setting forth the points and authorities relied upon in support" of the motion. Failure to comply is grounds for denial of the motion. LOCAL R. 7.1. Because Esmont provides no comprehensible argument in support of

---

**14.** A motion to strike a pleading is generally brought pursuant to Rule 12(f). Rule 12(f) permits the Court to strike from an answer an "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A Rule 12(f) motion must be brought within twenty days after service of the answer upon the plaintiff.

Esmont does not contend that any portion of the answer is insufficient as a matter of law, immaterial, impertinent, or scandalous. Nor has she brought her motion within twenty days of service. Her motion therefore cannot be granted pursuant to Rule 12(f).

a Rule 37(d) motion, and the Court can discern no grounds for granting it, it is deemed waived and denied.

*Conclusion*

For the foregoing reasons, the plaintiff's motions for summary judgment and to strike the defendants' answer are denied. Summary judgment is granted in favor of the defendants on all claims for relief.

The Clerk is directed to enter judgment dismissing the complaint and to furnish a filed copy of the within to all parties and to the magistrate judge.

SO ORDERED.