18-1378
Cugini v. City of New York, Palazzola

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2019

(Argued: March 29, 2019      Decided:  October 25, 2019)

Docket No. 18-1378

---

DONNA CUGINI,
*Plaintiff-Appellant*,

v.

CITY OF NEW YORK, CHRISTOPHER PALAZZOLA,
*Defendants-Appellees*.

---

Before:      SACK, HALL, AND DRONEY, *Circuit Judges*.

The plaintiff-appellant, Donna Cugini, brought a civil rights action in the

United States District Court for the Eastern District of New York against the City

of New York and Officer Christopher Palazzola in his individual capacity.  She

alleged a federal claim for excessive force against Palazzola, under the Fourth

and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, and state law claims

against the City for assault and battery and negligence.  As relevant to this

appeal, she alleged that Palazzola used excessive force in placing her in

handcuffs while she was in custody, thereby causing her to suffer, among other

things, permanent nerve damage to her wrist. On the defendants' motion for summary judgment, the district court (Sterling Johnson, Jr., *Judge*) assumed without deciding that the plaintiff had established her constitutional claim. It granted the defendants' motion for summary judgment, however, on the ground that Palazzola was entitled to qualified immunity because his behavior did not constitute a violation of a clearly established constitutional right. Because it dismissed the plaintiff's federal claim against Palazzola individually, the court declined to exercise supplemental jurisdiction over the plaintiff's state law claims against the City. We conclude that the plaintiff sufficiently established her constitutional claim for excessive force for purposes of surviving a motion for summary judgment. However, because at the time of the plaintiff's arrest Palazzola's actions did not violate clearly established constitutional law, the district court correctly concluded that his actions were protected by qualified immunity and granted summary judgment on that basis. Accordingly, the district court's judgment is:

AFFIRMED.

SCOTT A. KORENBAUM (Jason Leventhal,
Leventhal Law Group, P.C., Brooklyn, NY,

*on the brief*), New York, NY, *for Plaintiff-Appellant.*

DIANA LAWLESS (Zachary W. Carter, Richard Dearing, Scott Shorr, *on the brief*), Corporation Counsel of the City of New York, New York, NY, *for Defendants-Appellees.*

SACK, *Circuit Judge*:

On June 26, 2014, the plaintiff-appellant Donna Cugini voluntarily surrendered to police custody in Staten Island, New York, in connection with a misdemeanor complaint of domestic stalking and harassment filed against her by her estranged sister. During her subsequent temporary detention, she was handcuffed, suffering serious bodily injury as a result. She brought this action in the United States District Court for the Eastern District of New York against the City of New York and the police officer who physically restrained her while she was in custody, Officer Christopher Palazzola, in his individual capacity. She asserted a federal claim against Palazzola, under the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, alleging that he used excessive force when handcuffing her, thereby causing her to suffer, among other things, permanent nerve damage to her wrist. She also made supplemental state law claims of assault and battery and negligence against the City of New York.

3

On the defendants' motion for summary judgment, the district court (Sterling Johnson, Jr., *Judge*) assumed without deciding that Cugini had established her constitutional claim.  The court concluded, however, that Palazzola's actions did not violate a clearly established constitutional right, in part because Cugini gave only brief physical and non-verbal manifestations of her discomfort while handcuffed, and thus failed to alert Palazzola sufficiently to her distress.  The district court concluded that Palazzola was therefore entitled to qualified immunity and granted summary judgment on that basis.  After dismissing Cugini's federal claim, the district court declined to exercise supplemental jurisdiction over her state law claims against the City.

On appeal, Cugini argues that the district court thus erred.  She contends that Palazzola violated her clearly established constitutional right by using force against her that was excessive within the meaning of the Fourth Amendment.  She also asserts that because she has demonstrated that her federal law claim was wrongly dismissed, she should be permitted to pursue her state law claims against the City in federal court.

Under *Graham v. Connor*, 490 U.S. 386 (1989), we review a plaintiff's excessive force claim under the Fourth Amendment standard of objective

reasonableness to assess whether an officer's conduct was appropriate in light of the facts and circumstances confronting him. *Id.* at 397. To determine whether the amount of force an officer used was reasonable, we balance an individual's Fourth Amendment interests against countervailing governmental interests, including the severity of the crime and whether the suspect poses a safety or flight risk or resists arrest. *Id.* at 396. A plaintiff must also demonstrate that the officer was made reasonably aware that the force used was excessive. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (objective reasonableness determination must be made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time.") A plaintiff satisfies this requirement if either the unreasonableness of the force used was apparent under the circumstances, or the plaintiff signaled her distress, verbally or otherwise, such that a reasonable officer would have been aware of her pain, or both. *See id*.

We conclude that the plaintiff has sufficiently established her constitutional claim for purposes of surviving a motion for summary judgment. A reasonable jury could find that Palazzola's actions were objectively unreasonable in light of, *inter alia*, the minor nature of the plaintiff's alleged crime, the circumstances of her arrest, and the fact that the plaintiff posed no

apparent risk of flight or physical threat to the police or others. The defendant was also reasonably made aware of the plaintiff's pain, both as a result of her signs of distress—her repeated audible, if not verbal, expressions of pain—and because the unreasonableness of the force used by the defendant was apparent under the circumstances.

Nevertheless, because at the time of the defendant's actions it was not clearly established law that a plaintiff who did not verbally complain or request to have her handcuffs adjusted or removed, or both, could nevertheless recover on a handcuffing-based excessive force claim, the defendant was entitled to qualified immunity. The district court therefore correctly granted the defendants' motion for summary judgment on that ground.

*Factual Background*

We summarize the facts of this case "resolving all ambiguities and drawing all factual inferences in plaintiff['s] favor as the non-moving party," as we must in reviewing the grant of a motion for summary judgment. *Anthony v. City of New York*, 339 F.3d 129, 134 (2d Cir. 2003) (citation omitted).

The plaintiff-appellant, Donna Cugini, was at all relevant times a 58-year old nursing coordinator residing in Staten Island (Richmond County), New York. The defendant-appellee, Officer Christopher Palazzola, was at all relevant times a domestic violence prevention officer for the New York City Police Department assigned to the 121st Precinct on Staten Island.

On June 26, 2014, Cugini voluntarily surrendered to police custody at the 121st Precinct, as arranged by her attorney, in connection with a misdemeanor complaint of domestic stalking and harassment filed by her estranged sister. When Cugini arrived at the precinct, Palazzola handcuffed her, processed her arrest, and led her to a holding cell, where he removed her handcuffs.[1]

Some two hours later, Palazzola returned to the plaintiff's holding cell to move her to Staten Island Central Booking located inside the 120th Precinct stationhouse ("Central Booking"). He instructed her to step out of her cell and place her hands behind her back. Although she readily complied, Palazzola grabbed her arms, twisted her wrists into a "weird position," and handcuffed her "very tight." Cugini Dep. June 7, 2016 ("Cugini Dep."), 13-14, J. App. 55-56. She

---

[1] Cugini asserts no claims in this litigation based on her initial handcuffing.

said "ouch," and her body shuddered. *Id.* at 14, J. App. 56. In response, Palazzola threatened her—"don't make me hurt you"—and tightened her handcuffs further. *Id.* at 15-18, J. App. 57-60. The plaintiff again reacted, either exclaiming "ow" or uttering a "cry." *Id.* at 18, J. App. 60. Once the plaintiff was handcuffed, Palazzola moved her to the rear of a police car and drove her to Central Booking. Approximately 40 minutes elapsed between the time Palazzola handcuffed Cugini and their arrival at Central Booking. During that time, the plaintiff did not otherwise inform Palazzola that her handcuffs were causing her pain or ask that they be adjusted, refraining from doing so, she testified, because she was "too scared." Cugini Examination Aug. 31, 2015, 37, J. App. 187.

Once they arrived at Central Booking, Palazzola attempted to remove Cugini's handcuffs. She felt Palazzola "rip the cuffs" and continue to tighten, rather than loosen, them. Cugini Dep. 24-25, J. App. 66-67. A nearby officer saw that Palazzola had put the handcuffs on backwards. Palazzola continued to "fiddl[e] around with them" and to make the handcuffs "tighter and tighter." *Id.* at 25, J. App. 67. The other officer called for someone else to remove them.

Immediately upon removal of her handcuffs, Cugini felt pain in her wrists. When she was released from custody later that day, she went directly to the

emergency room at Richmond University Medical Center. Soon thereafter, she

nevertheless began experiencing pain, numbness, and twitching in her arms.

She continues to suffer from what has been diagnosed as permanent nerve

damage to her right wrist, and has lost the ability to perform many basic

household functions as a result.

In January 2015, all of the charges against the plaintiff were dismissed by

New York State for lack of evidence.

*Procedural History*

On September 23, 2015, the plaintiff filed a complaint in the United States

District Court for the Eastern District of New York against Officer Palazzola (the

"defendant") in his individual capacity and the City of New York (the "City";

together with the defendant, the "defendants"). She alleged a federal claim for

excessive force under the Fourth and Fourteenth Amendments pursuant to 42

U.S.C. § 1983 against Palazzola. She also alleged supplemental state law claims

for assault and battery and negligence against the City.

On February 2, 2018, the defendants moved for summary judgment. They

argued that the plaintiff could not recover on her excessive force claim against

Palazzola because she lacked proof that she had complained about her handcuffs at the time or requested that they be adjusted. And they asserted that even if the plaintiff's constitutional rights had been violated, Palazzola was entitled to qualified immunity because a reasonable officer could conclude that he acted properly under the circumstances. Finally, they argued that because the plaintiff's federal law claim should be dismissed, the district court should decline to exercise supplemental jurisdiction over her state law claims against the City. The plaintiff opposed the motion, contending that her shudders and utterances of "ouch" and "ow" as her handcuffs were being tightened were "obvious and clear expressions of pain and made [Palazzola] aware that [her] handcuffs were too tight and were needlessly causing pain and injury." Pl. Mem. of Law in Opp. to Sum. J., Feb. 2, 2018, at 8 (Dkt. #30), J. App. 6. She argued that Palazzola should not be entitled to qualified immunity solely on the basis of her failure to verbalize her pain because he "caused [her] silence by intimidating [her] with [a] threat." *Id.* at 9.[2]

---

[2] In her opposition to summary judgment, Cugini also voluntarily dismissed her state-law negligence claim against the City.

On April 10, 2018, the district court granted the defendants' motion for summary judgment. As a preliminary matter, the court briefly addressed the substance of the plaintiff's constitutional claim. In response to the defendants' argument that the plaintiff could not prevail on her claim because "she never asked that the handcuffs be loosened, or otherwise clearly communicated that they were causing her pain," the court wrote that such a proposition "oversimplifies the inquiry." *Cugini v. City of New York*, No. 15-CV-5517 (SJ) (ST), 2018 WL 1730334, at *2 n.1, 2018 U.S. Dist. LEXIS 60741, at *5 n.1 (E.D.N.Y. Apr. 10, 2018) (internal quotation marks omitted). It further noted that it was "reticent to impose a standard that would deny a plaintiff her day in court simply because she did not utter the magic words." *Id.* "Such a result," the court reasoned, "is not in the spirit of the fact-specific inquiry the Fourth Amendment necessitates." *Id.* For purposes of its qualified immunity analysis, however, the district court assumed without deciding that the plaintiff had suffered a Fourth Amendment injury and did not address the issue further.

The district court then concluded that Palazzola was entitled to summary judgment on the ground of qualified immunity. "Nothing in the facts indicates that [Palazzola] used force beyond that which was necessary to handcuff an

11

arrestee." *Cugini*, 2018 WL 1730334, at \*3, 2018 U.S. Dist. LEXIS 60741, at \*6.

Moreover, the plaintiff's "brief physical and verbal manifestations of tepid

discomfort were followed by a prolonged period free from any such

expressions." *Id.* Under these circumstances, the court thought, reasonable

officers could differ as to the legality of the defendant's conduct. The court

therefore concluded that Palazzola was entitled to qualified immunity and

granted summary judgment with respect to the plaintiff's excessive force claim

against him. After dismissing the plaintiff's only federal claim, the district court

declined to exercise supplemental jurisdiction over her state law claims against

the City.

Cugini argues on appeal that the district court erred by granting Palazzola

qualified immunity because a reasonable jury could conclude that the defendant

violated her clearly established Fourth Amendment rights by applying her

handcuffs with excessive force, while aware that he was doing so, resulting in

permanent nerve damage to her wrist. The plaintiff also contends that because

her federal law claim against Palazzola is viable, she should be permitted to

pursue her state law claims against the City in federal district court.

## DISCUSSION

I.     **Standard of Review**

"We review a district court's grant of summary judgment *de novo* to determine whether the district court properly concluded that there was no genuine dispute as to any material fact, such that the moving party was entitled to judgment as a matter of law."  *Myers v. Patterson*, 819 F.3d 625, 632 (2d Cir. 2016).  We do so "resolving all ambiguities and drawing all factual inferences in plaintiff['s] favor as the non-moving party."  *Anthony*, 339 F.3d at 134.

When a public official such as Palazzola invokes qualified immunity at the summary judgment stage, we "must consider two questions: (1) whether the evidence, viewed in the light most favorable to the plaintiff, makes out a violation of a statutory or constitutional right, and (2) whether that right was clearly established at the time of the alleged violation."  *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010).[3]  In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court concluded that we must conduct these inquiries sequentially.  *Id.* at 201.[4]

---

[3] We sometimes discuss the doctrine of qualified immunity, as we did in *Tracy*, in terms of the "violation of a *statutory or* constitutional right."  623 F.3d at 96 (emphasis added). On this appeal, it is the *constitutional* rights of the plaintiff that are at issue.

[4]  The *Saucier* test was later described by the Supreme Court thus:

In *Pearson v. Callahan*, 555 U.S. 223 (2009), however, it modified the *Saucier* two-step procedure so that we are now "permitted to exercise [our] sound discretion in deciding which of these two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. Here, we address them consecutively because the case involves "questions that do not frequently arise in cases in which a qualified immunity defense is unavailable." *Id.*; *see also Berg v. Kelly*, 897 F.3d 99, 106 (2d Cir. 2018) (commenting that it is "worthwhile" to exercise discretion in addressing both prongs of the qualified immunity analysis under similar circumstances (quoting *Pearson*, 555 U.S. at 242)). Accordingly, we first ask whether, taking the facts in the light most favorable to the plaintiff, she has sufficiently established a constitutional claim of excessive force.

## II.    Excessive Force

---

In *Saucier* [*v. Katz*, 533 U.S. 194 (2001)], this Court mandated a two-step sequence for resolving government officials' qualified immunity claims. First, a court must decide whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right. 533 U.S.[] at 201. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct. [*Id.*]

*Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

The plaintiff asserts that Palazzola violated her constitutional rights by using excessive force in handcuffing her while she was in custody. The district court declined to decide the plaintiff's constitutional claim, moving directly to its analysis of qualified immunity instead. Addressing that issue on review nonetheless, as we are permitted to do under *Pearson*, we conclude that the plaintiff has sufficiently established a constitutional claim for excessive force.

### 1. *Legal Standard*

In *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court concluded that where a claim for excessive force "arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment." *Id.* at 394. It is therefore analyzed under the Fourth Amendment's "reasonableness" standard, rather than under the subjective "substantive due process" approach, *id.* at 396-97, "which requires consideration of whether the individual officers acted in good faith or maliciously and sadistically for the very purpose of causing harm," *id*. at 397 (internal quotation marks omitted). Because "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," determining whether the amount

of force an officer used is reasonable "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (citations and internal quotation marks omitted). The proper application of the reasonableness standard, according to the *Graham* Court, "requires careful attention to the facts and circumstances of each particular case, including" (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* And the Court reiterated that the reasonableness inquiry is an "objective one." *Id.* at 397. It requires a court to view officers' actions "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation" or "the 20/20 vision of hindsight." *Id.* at 396-97 (citation omitted).

*Graham* thus stands for the proposition that a government officer may not intrude on a person's Fourth Amendment rights by employing a degree of force beyond that which is warranted by the objective circumstances of an arrest. And we decided long ago that the objective reasonableness standard established in *Graham* applies to actions taken with respect to a person who asserts, as does the

plaintiff here, a claim for excessive force after she has been arrested and detained, but "prior to the time when [she] is arraigned or formally charged, and remains in the custody (sole or joint) of the arresting officer." *Powell v. Gardner*, 891 F.2d 1039, 1044 (2d Cir. 1989).

In *Esmont v. City of New York*, 371 F. Supp. 2d 202 (E.D.N.Y. 2005), the United States District Court for the Eastern District of New York concluded that placing handcuffs on an arrestee in a manner that causes injury may "constitute excessive force in violation of the Fourth Amendment." *Id.* at 215 (citation omitted). And it provided three evidentiary factors for courts to consider in evaluating the reasonableness of a handcuffing: that "(1) the [arrestee's] handcuffs were unreasonably tight; (2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; and (3) the degree of injury to the [arrestee's] wrists." *Id*. at 215. Following *Esmont*, evidence of these factors has often been employed by other district courts in this Circuit to determine whether a plaintiff has sufficiently alleged a claim for excessive force in the process of handcuffing.[5]

---

[5] *See, e.g.*, *Pizarro v. Ponte*, No. 17 Civ. 4412 (LGS), 2019 WL 568875, at *6, 2019 U.S. Dist. LEXIS 22767, at *13-14 (S.D.N.Y. Feb. 11, 2019); *Othman v. City of New York*, No. 13 Civ.

These evidentiary factors may, indeed, prove useful to a district court in assessing the soundness of a handcuffing-based excessive force claim. The "test of reasonableness under the Fourth Amendment," however, "is not capable of precise definition or mechanical application." *Graham*, 490 U.S. at 396 (internal quotation marks omitted). A court's reasonableness analysis is not limited to a factual checklist; it must instead be guided by a "careful balanc[e]" between the "nature and quality of the intrusion" and the "countervailing government interests at stake" under the circumstances. *Id*. (citation and internal quotation marks omitted).

Thus a plaintiff asserting a claim for excessive force need not always establish that she alerted an officer to the fact that her handcuffs were too tight or causing pain. The question is more broadly whether an officer reasonably should have known during handcuffing that his use of force was excessive. A plaintiff satisfies this requirement if either the unreasonableness of the force used

---

4771, 2018 WL 1701930, at *7, 2018 U.S. Dist. LEXIS 59967, at *21 (E.D.N.Y. Mar. 31, 2018); *Ali v. Ramos*, No. 16-CV-01994 (ALC), 2018 WL 1353210, at *5, 2018 U.S. Dist. LEXIS 42489, at *10-12 (S.D.N.Y. Mar. 14, 2018); *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 724 (S.D.N.Y. 2017); *Case v. City of New York*, 233 F. Supp. 3d 372, 385 (S.D.N.Y. 2017); *Barcomb v. Kraeger*, No. 14-CV-1159 (JBA), 2016 WL 2644885, at *5, 2016 U.S. Dist. LEXIS 60536, at *14-17 (D. Conn. May 5, 2016).

was apparent under the circumstances, or the plaintiff signaled her distress, verbally or otherwise, such that a reasonable officer would have been aware of her pain, or both. *See Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009) ("[I]n some cases, the fact that an act will cause pain or injury will be clear from the nature of the act itself."); *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007) (*en banc*) (noting that the plaintiff must allege that "an officer ignored [her] timely complaints (*or was otherwise made aware*) that the handcuffs were too tight") (emphasis added); *Liiv v. City of Coeur D'Alene*, 130 F. App'x 848, 852 (9th Cir. 2005) (recognizing excessive force claims may arise where "plaintiffs *either* suffered damage to their wrists as a consequence of the handcuffs *or* the plaintiffs complained to the officers about the handcuffs being too tight") (emphasis added). And, as with all aspects of a Fourth Amendment inquiry, an officer's awareness is "judged from the perspective of a reasonable officer on the scene." *Graham*, 490 U.S. at 396 (citation omitted).

We conclude that where an officer's use of force in handcuffing is plainly unreasonable under the circumstances *or* where a plaintiff manifests clear signs of her distress—verbally or otherwise—a fact finder may decide that the officer

19

reasonably should have known that his use of force was excessive for purposes of establishing a Fourth Amendment violation.

2. *Application*

We conclude that each of the *Graham* factors weighs decidedly in the plaintiff's favor here. First, the crime at issue was a relatively minor one: the misdemeanor offense of stalking and harassing a family member from whom she was estranged. Second, there is no indication that the plaintiff posed a safety threat, immediate or otherwise, to Palazzola or anyone else. To the contrary, she voluntarily surrendered to police custody at her local precinct as instructed by her attorney. Third, she did not try to flee or resist Palazzola's attempt to handcuff her. She was in police custody at the time of his alleged abuse and complied with all of his directives while there. Under these circumstances, a reasonable jury could find that the severity of Palazzola's intrusion—continuing to tighten the plaintiff's handcuffs after she expressed physical pain and using force strong enough to cause her permanent injury—was unjustified. *See, e.g., Payne v. Pauley*, 337 F.3d 767, 778–79 (7th Cir. 2003) (finding that officer's "force in arresting a woman who was not threatening to harm the police officer or anyone else at the scene, was not resisting or evading arrest, was not attempting to flee,

20

and was charged with such minor offenses, was not objectively reasonable");

*Kopec v. Tate*, 361 F.3d 772, 777-78 (3d Cir. 2004) (deciding that overly tight handcuffing of arrestee for ten minutes leading to permanent wrist injury was unreasonable under "benign circumstances"); *Saunders v. Duke*, 766 F.3d 1262, 1264 (11th Cir. 2014) ("[A] police officer violates the Fourth Amendment . . . if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands.")

A reasonable officer on the scene should have known that the force used was excessive.  A reasonable jury could find that the degree of force employed by Palazzola was, objectively considered, disproportionate and unwarranted under the circumstances.  Moreover, Cugini directly communicated her distress to Palazzola through her pained utterances and bodily shudders while he was handcuffing her.  The defendant responded by threatening further harm—"don't

21

make me hurt you"[6]—with the likely goal of silencing her complaints.[7] He then continued to tighten her handcuffs, and Cugini again evidenced her physical discomfort. Under these circumstances, the defendant should reasonably have known that his use of force was excessive, both because the plaintiff clearly signaled her distress and because the excessive nature of the force used was

------

[6] The defendant argues that Cugini should not be permitted to rely on the threat that she alleges he made in asserting her excessive force claim because doing so would require the court to assess his subjective motivation. We are indeed not permitted to take Palazzola's "underlying intent or motivation" *simpliciter* into account in our analysis of the plaintiff's constitutional claim. *Graham*, 490 U.S. at 397. But neither are we permitted to ignore "the facts and circumstances of [this] particular case." *Id.* Viewed in the light most favorable to Cugini, the facts here include a law enforcement officer's threat to the plaintiff with the apparent goal, and ultimate effect, of silencing her cries of distress, and a realization of that threat through the subsequent tightening of the plaintiff's handcuffs. A reasonable jury could find that Palazzola's threatened harm reflected not only his subjective motivation, but also, objectively, whether the force used was excessive and whether he was reasonably made aware of the plaintiff's pain. A reasonable jury could also find that it was unreasonable for Palazzola to assume that the plaintiff was all right based on her silence following the handcuffing, in light of the fact that the plaintiff may only have remained silent because of Palazzola's threat of further pain. It may therefore to that extent be considered.

[7] Other courts have noted the risk that officer intimidation may suppress the complaints of an arrested person. *See Warren v. Williams*, No. Civ.A. 304CV537 (JCH), 2006 WL 860998, at *37, 2006 U.S. Dist. LEXIS 18900, at *113-14 (D. Conn. Mar. 31, 2006) (where officers made threats of further force, and plaintiff failed to complain out of fear, "general complaints about the handcuffs [from others] could have reasonably put the defendants on notice that they should check and adjust the cuffs of the occupants"); *see also Fry v. Smoker*, No. Civ.A. 11-3015, 2012 WL 1622656, at *6, 2012 U.S. Dist. LEXIS 64939, at *16-17 (E.D. Pa. May 9, 2012) (noting that there are "numerous reasons why arrestees may not complain to arresting officers that their handcuffs are too tight, such as intimidation by the officer").

apparent.

We conclude, then, that a reasonable jury could find that the defendant's actions were objectively unreasonable under the circumstances and that Cugini has therefore established a Fourth Amendment violation for present purposes.

## III. Qualified Immunity

The district court granted summary judgment on the ground that irrespective of whether Palazzola violated a constitutional right of the plaintiff, he was entitled to qualified immunity. On appeal, the plaintiff argues that there was clearly established law at the time of the relevant events that "the use of entirely gratuitous force against a restrained and unresisting arrestee by an officer is unreasonable, and therefore, excessive within the meaning of the Fourth Amendment." Pl. Br. 18. The defendant responds that the facts as the plaintiff alleges them did not constitute a violation of clearly established law because, according to the allegations, she "did not alert [him] that he could not tighten, or had to loosen, [her] handcuffs." Def. Br. 7.

To determine whether a defendant officer is entitled to qualified immunity from a Fourth Amendment claim against him on a motion for summary judgment, we are to assess whether "under clearly established law, every

23

reasonable officer would have concluded that [the defendant's] actions violated [the plaintiff's] Fourth Amendment rights in the particular circumstance presented by the uncontested facts and the facts presumed in [the plaintiff's] favor." *Brown v. City of New York*, 862 F.3d 182, 190 (2d Cir. 2017). In other words, summary judgment for the defendant is required where "the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the [defendant's] conduct under the circumstances." *Lennon v. Miller*, 66 F.3d 416, 421 (2d Cir. 1995). As a general rule, to determine whether a right is clearly established, we consider "Supreme Court decisions, our own decisions, and decisions from other circuit courts." *Simon v. City of New York*, 893 F.3d 83, 92 (2d Cir. 2018); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 746 (2011) ("[Q]ualified immunity is lost when plaintiffs point either to cases of controlling authority in their jurisdiction at the time of the incident or to a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.") (internal quotation marks omitted). That is not to say, however, that courts "require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

24

At the time of the plaintiff's arrest, the use of excessive force in handcuffing was prohibited by clearly established constitutional law. While we had yet to formally hold that a defendant may violate a plaintiff's Fourth Amendment rights in a handcuffing-based excessive force claim, we had long rejected the principle that handcuffing is "*per se* reasonable." *Soares v. State of Conn.*, 8 F.3d 917, 921 (2d Cir. 1993); *see Johnson v. Turnbill*, 715 F. App'x 84, 85 (2d Cir. 2018) (summary order) (recognizing that "excessively tight handcuffing that causes injury can constitute excessive force" under the Fourth Amendment (quoting *Shamir v. City of New York*, 804 F.3d 553, 557 (2d Cir. 2015)). And a consensus existed among our sister circuits that unduly tight handcuffing can constitute excessive force in violation of the Fourth Amendment.[8] That was enough to clearly establish in this Circuit that an officer's use of excessive force

---

[8] *See, e.g., Calvi v. Knox Cty.*, 470 F.3d 422, 428 (1st Cir. 2006); *Kopec*, 361 F.3d at 777-78 (3d Cir. 2004); *Heitschmidt v. City of Houston*, 161 F.3d 834, 839-40 (5th Cir. 1998); *Lyons v. City of Xenia*, 417 F.3d 565, 575-76 (6th Cir. 2005); *Herzog v. Vill. of Winnetka*, 309 F.3d 1041, 1043 (7th Cir. 2002); *Hanig v. Lee*, 415 F.3d 822, 824 (8th Cir. 2005); *Liiv*, 130 F. App'x at 852 (9th Cir. 2005); *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1208-09 (10th Cir. 2008). *But see Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir. 2002) ("[A] standard procedure such as handcuffing would rarely constitute excessive force where the officers were justified . . . in effecting the underlying arrest.").

during handcuffing could give rise to a Fourth Amendment claim for excessive force.[9]

Even assuming that the right to be free from excessive force during handcuffing was then clearly established, however, we cannot rest our ultimate conclusion as to immunity on a right that was clearly established only at "a high level of generality." *al-Kidd*, 563 U.S. at 742. Our analysis must instead be "particularized" to the facts of the case. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). We must therefore focus more narrowly on whether, at the time of Cugini's arrest, clearly established law required an officer to respond to a complaint by a person under arrest where, as here, that person exhibited only non-verbal aural and physical manifestations of her discomfort.

We conclude that at the time of the plaintiff's arrest, there was no such clearly established law. It remained an open question in this Circuit whether a plaintiff asserting an excessive force claim was required to show evidence that an

---

[9] *See al-Kidd*, 563 U.S. at 746 (noting that consensus of cases of persuasive authority may create clearly established law); *Scott v. Fischer*, 616 F.3d 100, 105 (2d Cir. 2010) (noting that even where this court has "not explicitly held a law or course of conduct to be unconstitutional, the unconstitutionality of that law or course of conduct will nonetheless be treated as clearly established if decisions by this or other courts clearly foreshadow a particular ruling on the issue, even if those decisions come from courts in other circuits") (citation and internal quotation marks omitted).

officer was made reasonably aware of her pain by means of an explicit verbal complaint. And our limited case law on the subject appeared to look to the presence or absence of such a complaint as a significant factor, if not a prerequisite to liability, in our Fourth Amendment analysis. *See Shamir*, 804 F.3d at 555, 557 (inferring a handcuffing-based excessive force claim from a complaint where the complaint alleged that the plaintiff did make verbal complaints, repeatedly asked that the handcuffs be loosened, complained that the handcuffs were "really tight" and "really hurt," and showed police officers his "really discolored," "really swollen" hands); *cf. Arroyo v. City of New York*, 683 F. App'x 73, 75 (2d Cir. 2017) (summary order) (affirming grant of summary judgment for defendants on handcuffing-based excessive force claim where plaintiff "alleged no physical injury and never asked for the handcuffs to be removed"). Similarly, there was no such consensus in federal circuits outside ours whether a verbal complaint was necessary, so we need not—we cannot—come to a conclusion as to the consequences of any such consensus had indeed there been one.[10]

---

[10] Some circuit courts required that a plaintiff make a formal complaint to establish an excessive force claim. *See Lyons*, 417 F.3d at 575-76 ("In order to reach a jury on [an excessive force] claim, the plaintiff . . . must show that officers ignored plaintiff's complaints that the handcuffs were too tight"); *Rodriguez v. Farrell*, 294 F.3d 1276, 1279

Before today, then, the law at least left room for reasonable debate as to whether the plaintiff was required to alert the defendant to her pain, and, if so, whether her non-verbal behavior was sufficient to do so. *Lennon*, 66 F.3d at 421. Although the plaintiff has persuasively argued that the defendant used undue force in handcuffing her, a reasonable officer under these circumstances could have concluded *at the time of her arrest* that he was not required to respond to her non-verbal indications of discomfort and pain. We therefore conclude that the plaintiff has failed to establish that the defendant violated a clearly established constitutional right and that the district court therefore correctly granted the defendants' motion for summary judgment on that basis.[11] We also conclude, however, that officers can no longer claim, as the defendant did here, that they are immune from liability for using plainly unreasonable force in handcuffing a

n.4 (11th Cir. 2002) (tight handcuffing claim failed where plaintiff "moaned or grunted" in pain while in transport to the police station but never asked officer to adjust his handcuffs). Others, as discussed above, permitted an excessive force claim to reach a jury, so long as the officer was otherwise made aware that the handcuffs of the person under arrest were too tight. *See Stainback*, 569 F.3d at 772; *Cortez*, 478 F.3d at 1129; *Liiv*, 130 F. App'x at 852.

[11] Because we conclude that the plaintiff's federal law claim was properly dismissed, we decline to reinstate her state law claims against the City.

28

person or using force that they should know is unreasonable based on the

arrestee's manifestation of signs of distress on the grounds that the law is not

"clearly established."[12]

---

[12] We acknowledge the presence of an "elephant in the room." The plaintiff testified that, at the time of her arrest, she and Palazzola already had a hostile personal relationship. Cugini further testified that there had been a months-long "intimate" relationship between her daughter and Palazzola that ended when Palazzola treated her violently. Cugini Dep. 37-38, J. App. 79-80. Palazzola's mother and the plaintiff's estranged sister—the woman who filed the current complaint against the plaintiff—were friends. And shortly before Cugini's arrest, Palazzola trespassed on her property while shouting her daughter's name. Cugini further testified that when she arrived at Central Booking, Palazzola, for no apparent reason, removed her prescription glasses while she was on the steps outside the precinct. *Id*. at 22, J. App. 64. She could barely see without them. *Id*. After another officer, observing the encounter, reprimanded Palazzola for doing so, he returned Cugini's glasses to her. *Id*. at 23, J. App. 65. Palazzola testified to the contrary that he never had a romantic relationship with Cugini's daughter; was unaware of his mother's relationship with Cugini's sister; and conducted only regular "home visits" to Cugini's dwelling prior to her arrest, during which he had a cordial conversation with her daughter. Palazzola Dep. June 2, 2016, 7, 53-56, J. App. 269, 316-18.

These serious, even tawdry, accusations and denials seem a far cry from those that may be expected to emerge in a typical confrontation between a law enforcement official and a person whom he is seeking to restrain. But their truth or falsity does not ultimately affect the outcome of this appeal. As we have explained, the subjective aspects of the defendant's behavior, his "underlying intent or motivation," do not matter for purposes of assessing whether his behavior violated the plaintiff's Fourth Amendment rights. *Graham*, 490 U.S. at 397. We therefore conclude, as indeed the plaintiff has effectively conceded in her presentation of this case on appeal, that they are not relevant to our legal assessment of the defendant's conduct.

**CONCLUSION**

While we recognize that the plaintiff has sufficiently demonstrated, for purposes of surviving a motion for summary judgment, a violation of her constitutional right to be free from excessive force during handcuffing, we conclude that she has failed to establish that the defendant violated law that was clearly established at the time of her arrest. The defendant was therefore entitled to the protection of qualified immunity. Because we conclude that the plaintiff's federal law claim was properly dismissed, we decline to reinstate her state law claims. We have considered the parties' remaining arguments on appeal and conclude that they are without merit. The judgment of the district court is therefore AFFIRMED.