20-14
*Ronald Ketcham v. City of Mount Vernon et al.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2020

(Argued: December 11, 2020          Decided: March 29, 2021)

Docket No. 20-14

_____

RONALD KETCHAM,

*Plaintiff-Appellant*,

v.                                                                    20-14-cv

CITY OF MOUNT VERNON, MICHAEL HUTCHINS, and ALLEN
PATTERSON,

*Defendants-Appellees.*[1]

_____

Before: POOLER, WESLEY, and CARNEY, *Circuit Judges*.

Appeal from the judgment of the United States District Court for the

Southern District of New York (Briccetti, *J.*) granting summary judgment to

---

[1] The Clerk of Court is respectfully directed to amend the official caption as set forth above.

Defendants on Ronald Ketcham's excessive force claims brought pursuant to 42 U.S.C. § 1983, as well as his state law assault and battery claims. Ketcham argues that the district court erred by resolving factual disputes in Defendants' favor, holding any use of force was de minimis, and misapplying the governing law on excessive force claims. Ketcham also seeks reassignment of the case to a new judge, arguing that the district court made inappropriate comments that created the appearance of bias. We find that the district court improperly resolved factual disputes in favor of the Defendants at the summary judgment stage. We do not find that reassignment is necessary. Accordingly, we VACATE the judgment of the district court and REMAND for further proceedings consistent with this opinion.

_____

DAVID B. SHANIES, New York, NY, *for Plaintiff-Appellant Ronald Ketcham*.

ANDREW C. QUINN, The Quinn Law Firm, P.L.L.C. (Steven J. Bushnell, *on the brief*), White Plains, NY, *for Defendants-Appellees City of Mount Vernon, Michael Hutchins, and Allen Patterson*.

POOLER, *Circuit Judge*:

Plaintiff-Appellant Ronald Ketcham seeks to vacate the judgment of the district court granting summary judgment in favor of the City of Mount Vernon and two Mount Vernon police officers, Michael Hutchins and Allen Patterson (collectively, "Appellees"), on Ketcham's excessive force claims brought pursuant to 42 U.S.C. § 1983, as well as his state law assault and battery claims. At the district court, Appellees argued that there were no genuine disputes of material fact regarding the incident between Ketcham and the officers or, alternatively, that the officers were entitled to qualified immunity. The district court agreed with Appellees' first argument, holding that any reasonable factfinder could only conclude that the officers' use of force was reasonable due to the limited force used and the minimal injuries that Ketcham suffered. The district court granted Appellees summary judgment on this ground and did not reach the issue of qualified immunity.

Our review of the record reveals that the district court's recitation of the facts elided crucial distinctions between the testimony of the three parties to this encounter. While the officers testified to using a reasonable amount of force to restrain an uncooperative individual matching the description of a suspect,

3

Ketcham testified to an aggressive assault, pleas for help, and a spiteful effort to punish a confused citizen by deliberately slamming his head into the patrol car's exterior as punishment for his confusion. It is for a jury and not a judge to decide which of these versions of events is accurate, and qualified immunity would not protect the deliberate infliction of injury suggested by Ketcham's testimony. As the district court did not properly view the evidence in the light most favorable to Ketcham at the summary judgment phase of the litigation, the judgment for Appellees must be reversed. Therefore, we vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

## BACKGROUND

On the afternoon of March 28, 2017, Ketcham, a retired federal probation officer, was walking toward Main Street near his home in New Rochelle, New York.  Hutchins and Patterson, police officers assigned to the Mount Vernon Police Department's ("MVPD") warrant squad, were in the area searching for an individual with an outstanding warrant for a misdemeanor offense of forcible touching. The officers were in plain clothes in an unmarked vehicle with neither the emergency lights nor the sirens activated at the time. As the officers

4

approached Main Street, they saw a man (Ketcham) who fit the physical description of the individual with the active arrest warrant.

Before the district court, the parties disputed what happened after the officers spotted Ketcham. Ketcham stated that the vehicle came to a screeching halt next to him on the sidewalk at which point Patterson got out of the car and asked Ketcham to identify himself. Ketcham responded by asking the same of Patterson, to which Patterson rejoined that he was "taking [him] in." App'x at 93. Because Ketcham did not see Patterson wearing a badge or other identifying information, he thought he was being mugged or abducted, and so called out for bystanders to "get a uniformed police officer to the scene." App'x at 94. In an instant, Patterson overpowered Ketcham, grabbing his wrist. Patterson then twisted Ketcham's arms behind his back, threw him into a nearby chain link fence, and snapped handcuffs tightly around his wrists, causing him substantial pain. Apparently, Patterson did not "double lock[]" the handcuffs, a mechanism designed to avoid excessive tightening. App'x at 72, 115. Although Ketcham told Patterson that the handcuffs were hurting his wrists, Patterson ignored the complaints. At some point during this encounter, Ketcham saw a badge and

realized Patterson might be a police officer, but he was not certain. Ketcham did not recall any involvement from Hutchins during the physical altercation.

Ketcham further testified that he remained uncertain of what was happening as Patterson forced him into the back seat of the car, "slamm[ing] [his] head into the car's door frame" in the process. App'x at 223. After he was secured in the car, Ketcham observed Hutchins passing a file folder to Patterson, containing a photo of a white man with a bald head who looked like Ketcham. It was then that Ketcham realized that the two men were police officers, and he quickly told them that he was a former law enforcement officer as well. After hearing this, Patterson came around to the back seat, removed Ketcham's wallet, examined his driver's license, and confirmed that he was not the subject of the outstanding warrant. The officers then removed the handcuffs and returned the wallet. Ketcham asked for the officers' business cards, but Patterson laughed, and the officers drove away.

The officers' version of events differed greatly from Ketcham's. The officers testified that they approached Ketcham with shields visible around their necks and identified themselves as members of the MVPD. The officers told Ketcham that he fit the description of an individual with an active warrant, and

6

they asked him for identification. He did not provide one and instead verbally challenged the officers. Patterson testified that Ketcham then tried to push past Patterson, who responded by grabbing Ketcham's right hand, placing him in an "arm bar," and turning him around to handcuff him. App'x at 67-68. Hutchins did not testify that Ketcham made any physical contact with Patterson, but that they moved to arrest Ketcham when he refused to comply with their instructions. Both testified that Ketcham was screaming that he was being robbed and that they were fake cops trying to rob and kidnap him. Patterson further testified that, during the struggle, he had to push Ketcham up against the chain link fence to secure him because Ketcham continued to struggle and actively resist arrest. Patterson never felt in danger during the incident, and he subdued Ketcham in about a minute.

Both officers testified that once the handcuffs were secured on Ketcham's wrists, they attempted to move him into their vehicle. Ketcham resisted their efforts and Patterson later testified that although he attempted to guide Ketcham's head as they moved him into the vehicle, Ketcham's flailing resulted in him bumping his own head into the door frame. Hutchins testified that he walked Ketcham over to the car door and asked him to sit in the vehicle, but

7

Ketcham resisted by placing his foot in the door frame. In Hutchins's account, he then put his hand on Ketcham's shoulder and again asked him to sit down; this time Ketcham complied. He testified that neither he nor Patterson placed their hands on Ketcham's head, and that Ketcham did not hit his head. Further, after Ketcham was inside the vehicle, the officers told him the name of the individual subject to the warrant, and Ketcham provided his name and identifying documents. Patterson testified that upon the officers securing Ketcham in the vehicle, he immediately became cooperative and told them he was on their side. After providing his identifying documents and explaining that he used to be in law enforcement too, the officers apologized for the incident and quickly released him. They did not recall Ketcham asking for their cards, although Hutchins testified that he and Patterson informed Ketcham of their names and where they worked.

Ketcham testified that he suffered injuries to his head, knee, and wrists, and that although his head hurt, it was not bleeding or bruised and did not have broken skin. He did, however, have slight bruising on his knee from being pushed against the chain link fence, and he had broken and reddened skin, bruises, and discoloration on his wrists from the handcuffs. He did not seek

8

medical treatment for the physical injuries but claims to now suffer from increased anxiety as a result of the incident, for which his general practitioner has prescribed medication. Ketcham attached photos of his wrist and knee injuries to his amended complaint.

After the incident, Hutchins reported it to his superior officer. In his report, he stated that Ketcham adopted a "fighting stance," which he described in his deposition as when Ketcham "took one step back" and kept his arms at his sides. App'x at 121. Ketcham called the MVPD the same day as the incident, and the department informed him that the car he described belonged to the warrant squad.

On September 19, 2017, Ketcham sued Mount Vernon and the two officers for excessive force and unlawful search and seizure pursuant to Section 1983. He also brought state law claims of battery, assault, and unlawful imprisonment. Ketcham later withdrew the unlawful search and seizure and unlawful imprisonment claims.

On February 19, 2019, Defendants requested leave to file a motion for summary judgment, and the district court held a conference on March 14, 2019 to discuss the proposed motion. At that conference, the district court made

9

comments that Ketcham considered biased. The district court noted the injuries in this case were more minor than in other excessive force cases and remarked that "this might be the rare case where your client's feelings were hurt, and I don't blame him, except as a former law enforcement officer, surely he must realize that sometimes . . . the police make a . . . good-faith mistake." App'x at 132. The district court also urged Ketcham to consider a settlement and emphasized Appellees' "very generous" Rule 68 offer. App'x at 133. The district court described excessive force claims involving much more severe injuries where plaintiffs did not recover nearly as much.

After Ketcham's counsel responded that Ketcham viewed the case very differently than the court did, a transcript of the proceedings reflects that the district court told counsel that

> because I have hundreds of motions . . . you'll go to the bottom of the pile. It just is. There's nothing special about this case. If anything, what I should do is put it at the bottom of the second pile, it's such a *de minimis* – it's not literally *de minimis*, but what I mean is, in comparison to so many other cases I have where people have real concrete life-long injuries.

App'x at 140.

The district court expressed to counsel that Ketcham had no serious physical injuries and stated that "[h]e should be thanking his lucky stars" that he

10

did not lose any time from work or suffer severe injuries and that he received an apology. App'x at 141.

On December 30, 2019, the district court granted summary judgment to Appellees on all claims. *Ketcham v. City of Mount Vernon*, No. 17-CV-7140 (VB), 2019 WL 7293365, at *1 (S.D.N.Y. Dec. 30, 2019). The district court ruled that regardless of any factual disputes, the force used was reasonable and Ketcham's injuries were *de minimis*. *Id.* at *3-5. Ketcham appeals from this decision and seeks reassignment of the case based on the district court's judge's comments at the pre-motion conference.

**DISCUSSION**

We review a grant of summary judgment de novo, and in so doing, we construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Okin v. Vill. of Cornwall–on–Hudson Police Dep't*, 577 F.3d 415, 427 (2d Cir. 2009). "[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis and internal quotation marks omitted). Examining the

11

reasonableness of the force used "requires careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. "*Graham* . . . stands for the proposition that a government officer may not intrude on a person's Fourth Amendment rights by employing a degree of force beyond that which is warranted by the objective circumstances of an arrest." *Cugini v. City of New York*, 941 F.3d 604, 612 (2d Cir. 2019).

In deciding the motion for summary judgment, the district court was required to determine whether Ketcham raised a question of material fact, drawing all inferences in Ketcham's favor. *See United States v. Rem*, 38 F.3d 634, 643-44 (2d Cir. 1994). In granting Appellees summary judgment on Ketcham's excessive force claim, the district court misapplied this standard. The district court described the incident as follows:

> Plaintiff matched the physical description of an individual with an outstanding arrest warrant. He testified that when he was stopped by the police, he thought he was being abducted or robbed and thus, was not cooperative with the officers. . . . Officer Patterson testified any use of force by the officers was only enough

12

> to match the force plaintiff was exerting to evade arrest. Therefore, the officers' use of the fence to prevent plaintiff from pushing past them was reasonable, as was placing plaintiff's right hand in an arm bar, handcuffing plaintiff, and inadvertently bumping plaintiff's head as he was placed in the vehicle.

*Ketcham*, 2019 WL 7293365, at *4. This recitation adopts Patterson's version of events even though Patterson's description deviates from both Ketcham's testimony and, in several material aspects, Hutchins's testimony.

Ketcham testified that he did not exert any force to resist arrest and his objections were purely verbal. Neither Ketcham nor Hutchins testified that Ketcham tried to push past the officers, and Ketcham testified that Patterson pushed or slammed his head into the vehicle, not that it was an inadvertent bump. Drawing all inferences in Ketcham's favor, as required when considering a summary judgment motion, a reasonable factfinder could determine that Patterson, who acknowledged he did not feel that he was in any danger, unnecessarily threw Ketcham against a wall, placed him in overtight restraints despite his protestations, and deliberately pushed Ketcham's head into the car door. We have held in similar cases that this type of judicial evidence weighing constitutes reversible error. *See, e.g.*, *Mickle v. Morin*, 297 F.3d 114, 121 (2d Cir. 2002) ("[I]n virtually every particular relating to the encounter between [plaintiff]

13

and the officers, the district court . . . adopted a version of the circumstances that was proffered by [the officers]. As [a] jury [is] not required to believe the disputed accounts given by either of the defendants, the court was required to disregard their testimony in ruling on their motion for judgment as a matter of law.").

If Ketcham's version of events is credited, a reasonable jury could find that the force was "beyond that which [was] warranted by the objective circumstances of [the] arrest." *See Cugini*, 941 F.3d at 612. Accepting Ketcham's version of events, Patterson used unnecessary force to restrain an unresisting individual and deliberately attempted to harm Plaintiff when he was already in handcuffs. While we have long acknowledged that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates [an individual's] constitutional rights," *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973), *overruled in part by Graham*, 490 U.S at 392-94, we have also held that both unnecessary handcuff tightening and pushing an arrestee's head into a police car door can constitute excessive force, *see Cugini*, 941 F.3d at 616 (holding that our precedents "clearly establish in this Circuit that an officer's use of excessive force during handcuffing could give rise to a Fourth Amendment claim

14

for excessive force" (footnote omitted)); *see also Maxwell v. City of New York*, 380 F.3d 106, 109 (2d Cir. 2004) (holding that a shove of a restrained defendant into a police car causing the defendant's head to strike a hard surface inside the car could constitute excessive force).

Appellees argue that the district court's description of the facts was not improperly biased towards the officers and that there is an inconsistency between Ketcham's deposition testimony, where he stated that Patterson hit his head on the car or pushed his head into the car, and his declaration, which used the word "slammed." It is not clear what is inconsistent about these descriptions, and any perceived inconsistency in wording is properly addressed by cross-examination, not a summary judgment motion, where all facts must be construed in the most favorable light for Ketcham.

Appellees also point to Ketcham's statements that he continued to scream for help throughout the encounter as an "important[]" factor in the excessive force analysis. Appellees' Br. at 18. They do not, however, offer case law that suggests that force of any quantum is reasonable in response to purely verbal protestations. Indeed, this would violate *Graham*, which allows only the force necessary to make an arrest. Therefore, far from supporting Appellees' position,

Ketcham's testimony in this regard actually creates a triable issue of fact on the question of excessive force. *See Bellamy v. City of New York*, 914 F.3d 727, 746 (2d Cir. 2019) ("[A] § 1983 plaintiff's testimony alone may be independently sufficient to raise a genuine issue of material fact.").

The district court also held that Ketcham's injuries were de minimis as a matter of law, barring recovery of any damages. *Ketcham*, 2019 WL 7293365, at *5. The fact that Ketcham's injuries were not severe is insufficient to merit summary judgment. With respect to the handcuffing, "[t]he question is . . . whether an officer reasonably should have known during handcuffing that his use of force was excessive." *Cugini*, 941 F.3d at 613. Here, Ketcham testified that he complained to Patterson that the handcuffs were causing him pain, thus suggesting that Patterson was on notice that the force was excessive. In addition, all of the *Graham* factors point in favor of Ketcham at the summary judgment stage: the offense was a misdemeanor; Patterson did not feel that Ketcham posed a threat; and Ketcham did not flee or, crediting his testimony, attempt to physically resist**.** *See id.* at 613-14.

The court below relied on a line of district court cases holding that while a plaintiff's wrist injuries "need not be severe or permanent," they "must be more

than merely de minimis" to survive a motion for summary judgment. *See, e.g.,*

*Usavage v. Port Auth. of N.Y. & N.J.*, 932 F. Supp. 2d 575, 592 (S.D.N.Y. 2013)

(citations and internal quotation marks omitted) (collecting cases). In turn, the

district court here emphasized Ketcham's failure to seek medical treatment and

the lack of permanent injury as bases to dismiss the tight-handcuffing

allegations. However, we have never held that a court may grant summary

judgment to officers on an excessive force claim merely because the injuries were

minor even where the force was unreasonable. Any such holding would violate

the rule announced in *Graham* and would grant a windfall to officers who

commit misconduct but could escape liability based upon the hardiness of their

victims. While the absence of serious injury is certainly a matter that the jury can

consider in assessing both the reasonableness of the force and potential damages

from any misconduct, a district court should not grant summary judgment on

this basis alone.

Additionally, there is presumably no proper law enforcement justification

for deliberately pushing a restrained individual's head into a car's hard, metal

doorframe. Thus, if a jury credits Ketcham's testimony that Patterson

deliberately slammed his head into the car's doorframe despite him being

17

restrained and not resisting, that force would be excessive. Regardless of the extent of Ketcham's injuries, the infliction of harm against a restrained and unresisting suspect is excessive force, and such conduct would violate the Fourth Amendment.

As an alternative basis for upholding the district court's decision, Appellees argue that the officers were entitled to qualified immunity as a matter of law. To demonstrate entitlement to qualified immunity, the officers must show that their actions did not violate clearly established law, or that it was objectively reasonable for them to believe that their actions did not violate such law. *See Salim v. Proulx*, 93 F.3d 86, 91-92 (2d Cir. 1996).

The district court did not address this argument. Because we conclude that reasonable officers would not disagree as to the illegality of the alleged handcuffing conduct, qualified immunity is rejected in that respect. *See Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995). The established law of this Circuit makes clear that the excessive tightening of handcuffs after an explicit verbal complaint of pain is made violates the Fourth Amendment. *Cugini*, 941 F.3d at 616. Accordingly, it would be unreasonable for officers to believe that ignoring Ketcham's cries to loosen the over-tight, non-double-locked restraints did not

18

violate clearly established law. If credited by a jury, Ketcham's testimony indicates Patterson did just that. We therefore reject his qualified immunity defense as to the handcuffing allegations.

We reach the same conclusion with regard to the alleged head-slamming conduct.  By March 2017, it was "clearly established by our Circuit caselaw that it is impermissible to use significant force against a restrained arrestee who is not actively resisting."  *Lennox v. Miller*, 968 F.3d 150, 157 (2d Cir. 2020).  "[T]his is true despite differences in the precise method by which that force was conveyed."  *Id*.[2] Even more to the point, we have previously reversed a grant of summary judgment where the plaintiff adduced evidence that a police officer "shoved her head first into his police car, causing her head to strike the metal partition between the front and back seats."  *Maxwell*, 380 F.3d at 108.  Therefore, accepting as true Ketcham's testimony that Patterson "slammed [his] head into the car's door frame" despite being restrained and physically docile, App'x 223 ,

---

[2] In *Tracy v. Freshwater*, 623 F.3d 90, 99 (2d Cir. 2010), this Court held that using pepper spray gratuitously against a restrained and unresisting arrestee is excessive force. In 2018, we held that *Tracy* strongly suggested as early as 2013 that "officers may not use a taser against a compliant or non-threatening suspect." *Muschette on Behalf of A.M. v. Gionfriddo*, 910 F.3d 65, 69 (2d Cir. 2018) (citing *Tracy*, 623 F.3d at 96-98). And in *Lennox*, 968 F.3d at 156 (2d Cir. 2020), we held that it was clearly established before July 2016 that slamming an arrestee's head into the ground after she was already handcuffed and lying face down is excessive force.

19

we must reject Patterson's qualified immunity defense in this respect as well.

Finally, Ketcham asks us to reassign this case based on the district court's judge's comments during a pre-motion hearing. Reassignment of a case "is an extreme remedy, rarely imposed . . . but occasionally warranted, even in the absence of bias, to avoid an appearance of partiality." *United States v. City of New York*, 717 F.3d 72, 99 (2d Cir. 2013) (internal citations and quotation marks omitted). We will only reassign a case on remand in an "extraordinary case." *United States v. Jacobs*, 955 F.2d 7, 10 (2d Cir. 1992) (internal quotation marks omitted). We have provided a list of factors for assessing when reassignment is warranted:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Gonzalez v. Hasty*, 802 F.3d 212, 225 (2d Cir. 2015) (citation omitted).

The statements of the district court here are insufficient to require reassignment. The district court expressed skepticism about Ketcham's possible

20

recovery, frustration regarding his decision not to accept what the court saw as a fair settlement proposal, sympathy for law enforcement professionals' work, and a warning that the case would be at the back of his agenda. While some of these comments may have been ill-considered, the district court did not express a position as to the ultimate outcome of the case: "Is [the claim] enough to get past summary judgment? Maybe. I'm not ruling today. I don't want you to think otherwise. I'm not." App'x at 134. The district court's comments referenced the district's shortage of judges and high case load, and they were properly understood as a warning about the risks of litigation and advice to settle. *See Liteky v. United States*, 510 U.S. 540, 555-56 (1994) ("*Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." (emphasis in original)).

The district court may have been overly eager in its efforts to push Ketcham towards settlement, but such comments are not sufficient to show that

the court could not be impartial. The district court delivered a decision in a timely fashion, and while we disagree with the outcome, its reasoning was not absurd or illegitimate.

Ketcham offers no basis to conclude that the district court would be unable to set aside its previously expressed views and fairly shepherd the case to conclusion. Ketcham does not address this issue in his briefing, but he points to alleged errors in the district court's opinion. The district court's errors of law are not a basis to question its ability to heed the decisions of this Circuit. Absent any reason to find the district court would not accept our decision on remand, there are no grounds to reassign the case. *See Gonzalez*, 802 F.3d at 225.

## CONCLUSION

As set out above, Ketcham's testimony raised questions of material fact and Appellees are not entitled to qualified immunity as a matter of law. Ketcham is entitled to an opportunity to prove his case before a jury. Accordingly, the judgment of the district court is vacated, and this case is remanded for further proceedings consistent with this opinion.